**BAILEY AND WILLIAMS, Appellant,**

v.

**David WESTFALL, Appellee.**

**No. 05–85–01363–CV.**

Court of Appeals of Texas,
Dallas.

Feb. 27, 1987.

Rehearing Denied April 3, 1987.

J. Carlisle DeHay, Jr., Kevin Cook, Dallas, for appellant.

John R. Guittard, Dallas, for appellee.

Before WHITHAM, SCALES[1] and HECHT[2], JJ.

HECHT, Justice.

An arbitration panel determined the amount G. David Westfall, an attorney, was entitled to receive under a written partnership agreement from his former law firm, Bailey and Williams, when he withdrew as a partner in the firm. Westfall sued to set aside the arbiters' award. The trial court summarily vacated the arbitration award, ordered a jury trial de novo on the very same issues decided by the arbiters, and rendered judgment that Westfall recover an amount in excess of the arbitration award plus attorney fees. Bailey and Williams appeals. We hold that the trial court erred in vacating the arbitration award, and reverse and render.[3]

Westfall joined the law firm now known as Bailey and Williams in 1963, became a partner in 1967, and withdrew in 1982. Payments due withdrawing partners are governed by the following provision of a written partnership agreement which Westfall signed with all his partners in 1969:

Partition with and Payments to the Withdrawing Partner

A. On the effective date of withdrawal, the withdrawing partner shall be paid the amount of his net capital in the firm.

B. Within 90 days after the effective date of withdrawal, an amount of cash shall be paid to the partner who is with-drawing, equal to the amount to which he is entitled under normal bookkeeping procedures utilized by the firm on the effective date of his withdrawal, less any charges against his account which have been made.

Westfall and his partners agreed upon the amount of his net capital in the firm at withdrawal under subparagraph A, and upon the percent of his interest in the firm. They disagreed on the amount due Westfall under subparagraph B, "under normal bookkeeping procedures utilized by the firm". Their disagreement centered on three items: goodwill, accounts receivable and work in progress, and prepaid expenses and client advances.

Westfall claimed that at his withdrawal the firm had goodwill of substantial value and that he was entitled to his share. Bailey and Williams argued that any goodwill associated with a law firm attaches only to the partners individually and not to the firm as a partnership entity, and therefore denied that it had any goodwill itself. It contended that its partners had goodwill carried on its books at a much lower figure than that claimed by Westfall, and that Westfall took his share in kind when he withdrew. Because the goodwill valuation was carried on the firm's books and Westfall's share was thus included in the computation of his net capital account, Bailey and Williams claimed that the amount due Westfall for his net capital account under subparagraph A should be reduced by his share of the goodwill.

As for accounts receivable and work in progress, Westfall claimed that he was entitled to his share of the firm's total accounts receivable. Westfall acknowledged that the firm was likewise entitled to its share of the accounts receivable he collect-

1. The Honorable R.T. Scales, Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment, was a member of the Court when this case was submitted.

2. The Honorable Nathan L. Hecht, Justice, succeeded the Honorable Lawrence B. Mitchell, Justice, at the expiration of his term on December 18, 1986, after the case was submitted. Justice Hecht has reviewed the tape recording of oral argument.

3. Bailey and Williams asserts eleven points of error attacking various aspects of the proceedings in the trial court. The principal one, however, and in view of our holding the only one we need address, is the second point of error complaining of the setting aside of the arbitration award.

ed for work done before withdrawal on files he retained afterward, but claimed that he was entitled to hold those amounts to offset the larger sum the firm owed him. Bailey and Williams contended that because it used a cash basis accounting system, accounts receivable and work in progress were not recognized "under normal bookkeeping procedures utilized by the firm", and therefore Westfall was not entitled to any portion of them under subparagraph B. Somewhat inconsistently, however, Bailey and Williams also claimed that it was entitled to its share of the payments collected by Westfall on files he retained for work done prior to withdrawal.

As for prepaid expenses and client advances, Westfall claimed his share of such sums as carried on the firm books immediately prior to his withdrawal. Bailey and Williams contended that Westfall was not entitled to any part of such sums because "under normal bookkeeping procedures" they were written off at Westfall's departure.

As required by the partners' written agreement, Westfall, and Bailey and Williams submitted their disputes to arbitration "in accordance with the rules then in effect of the American Arbitration Association, to the extent consistent with the laws of the State of Texas." An arbitration panel of two lawyers and a certified public accountant, chosen without objection by Westfall or Bailey and Williams, heard extensive evidence and argument and gave both parties a full opportunity to present their claims. In their award the arbiters determined the amount due Westfall "under normal bookkeeping procedures utilized by the firm", the extent of his entitlement as defined in the partnership agreement, and explained the reasons for their decisions.

First, the arbiters decided that under its normal bookkeeping procedures Bailey and Williams itself, and not just its partners, had goodwill equal to the value it had carried on its books for many years, and that Westfall was entitled to his share. Second, the arbiters decided that Westfall was not entitled to any part of the firm's accounts

receivable and work in progress on files the firm retained because no such amounts had ever been included in the firm's financial statements under its normal cash basis bookkeeping procedures. Correspondingly, the arbiters also decided that Bailey and Williams was not entitled to any part of the payments Westfall received for work done before withdrawal on files he retained. Finally, the arbiters decided that Westfall was entitled to his share of prepaid expenses and client advances because such sums were normally carried on the firm books.

Dissatisfied with the award, Westfall filed suit in the district court to set it aside. Bailey and Williams moved for summary judgment, asserting that there was no genuine issue of material fact and that as a matter of law the award could not be set aside. Westfall did not move for summary judgment. The trial court denied Bailey and Williams' motion and apparently thought by so doing he had vacated the arbitration award. After ruling on the motion for summary judgment, he stated in open court that he considered the arbiters' failure to award Westfall part of the firm's accounts receivable to be a gross mistake. However, the only order issued following the hearing merely denied the motion for summary judgment.

The trial court then set the case for jury trial on the very issues that had been arbitrated. Before trial began the court reiterated that he had concluded at the pretrial conference that the arbitration award should be vacated as a matter of law. Apparently treating the case as an action for accounting, the trial court permitted the parties to offer evidence not offered at the arbitration, including evidence of attorney fees incurred throughout both the arbitration and court proceedings. However, the court excluded evidence offered to show that the award was not the result of gross mistake. The jury found that Westfall was entitled to recover an amount much greater than the arbitration award plus attorney fees. Seven weeks later the trial court rendered judgment on the verdict, except to award Westfall additional attorney fees not found by the jury. The same day he

signed the judgment the trial court also signed a "pretrial conference order" setting out for the first time the action taken at the pretrial conference vacating the arbitration award.

The parties agree that the validity of the arbitration award is to be determined by Texas common law rather than by the Texas General Arbitration Act.[4] Westfall, also agrees that such determination in this case is a question of law and not of fact.

Texas law favors arbitration. *Brazoria v. Knutson,* 142 Tex. 172, 176 S.W.2d 740 (1944). An arbitration award has the same effect as the judgment of a court of last resort, and a trial judge reviewing the award may not substitute his judgment for the arbiters' merely because he would have reached a different decision. Every reasonable presumption must be indulged to uphold the arbiters' decision, and none is indulged against it. *City of San Antonio v. McKenzie Construction Co.,* 136 Tex. 315, 150 S.W.2d 989, 996 (1941).

Not every error of fact or law warrants setting aside an arbitration award, but only those errors which result in a fraud or some great and manifest wrong and injustice. *Johnson v. Korn,* 117 S.W.2d 514, 519 (Tex.Civ.App.—El Paso 1938, writ ref'd). Only in a very clear case where an arbitration award is tainted with fraud, misconduct or gross mistake can it be set aside. *City of San Antonio v. McKenzie Construction Co.,* 136 Tex. 315, 150 S.W.2d 989, 996 (1941); *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 352 (Tex.1977).

Westfall does not claim that the arbitration award was the result of fraud or misconduct on the part of the arbiters, but only that it was the result of gross mistake. Gross mistake implies bad faith or failure to exercise honest judgment. *House Grain Co. v. Obst,* 659 S.W.2d 903 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Gross mistake results in a decision that is arbitrary or capricious. An honest

judgment made after due consideration given to conflicting claims, however erroneous, is not arbitrary or capricious. *Grand International Brotherhood of Locomotive Engineers v. Wilson,* 341 S.W.2d 206, 210–211 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.).

Westfall argues that the arbiters' failure to award him his share of the firm's accounts receivable and work in progress was a gross mistake for several reasons. First, Westfall argues that the arbiters' decision was contrary to Texas law, specifically our decision in *Bader v. Cox,* 701 S.W.2d 677 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). In *Bader* we held that under the Texas Uniform Partnership Act, absent a partnership agreement, the widow of a deceased partner was entitled to her husband's share of his law firm's accounts receivable at his death, even though the firm utilized a cash basis accounting system. Where there is a partnership agreement, however, as there is in the present case, the rights of a withdrawing partner are governed by that agreement, not by statute. *See* Tex.Rev.Civ.Stat.Ann. art. 6132b, §§ 18, 38 (Vernon 1970). The arbiters' award, based upon the written partnership agreement, is not contrary to but rather consistent with *Bader* and Texas law.

Second, Westfall contends that the arbiters based their decision upon an erroneous conclusion that the accounts receivable records were not part of the firm's books. The contention is simply incorrect. As the award itself shows, the arbiters based their decision, not on any technical distinction between books and records, but on the fact that Bailey and Williams utilized a cash basis accounting system. The issue was not whether or how accounts receivable records were kept by the firm, but when accounts receivable were recognized as an asset of the firm. The arbiters concluded that under the cash basis ac-

---

**4.** Tex.Rev.Civ.Stat.Ann. arts. 224 to 238–6 (Vernon 1973). The statute is merely cumulative of the common law, however. *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 351 (Tex.1977);

*Carpenter v. North River Ins. Co.,* 436 S.W.2d 549, 553 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The result in this case would not be different under the statute.

counting system utilized by Bailey and Williams a withdrawing partner would not be entitled to a share of accounts receivable because they were not recognized as an asset of the firm until actually paid. The arbiters were buttressed in their conclusion by the fact that three of the four partners who withdrew before Westfall had not received any part of the firm's accounts receivable. The fact that one previously withdrawing partner did receive a share of accounts receivable does not indicate bad faith or a lack of honest judgment on the part of the arbiters. On the contrary, it shows that the arbiters considered conflicting evidence and reached a fair conclusion.

Third, Westfall argues that the arbiters' decision effectively renders meaningless subparagraph B of the withdrawing partner provision of the partnership agreement and ignores the vast part of the firm's assets. Again Westfall is incorrect. The arbiters' award does not deprive subparagraph B of meaning, but rather, imbues it with the meaning the arbiters determined the parties intended it to have. The arbiters' award ignores accounts receivable only because the parties agreed they should be ignored in determining the amount due withdrawing partners.

 Fourth, Westfall argues rather curiously that proof of the arbiters' gross mistake is shown by their inconsistency in denying Westfall a share of the firm's accounts receivable while awarding him all funds received after withdrawal on files he retained. Actually, not only are these decisions entirely consistent, but both follow from the arbiters' conclusion that the cash accounting system utilized by the parties did not recognize accounts receivable as assets. Just as the firm was not entitled to part of the accounts receivable on files Westfall retained after withdrawal, even though the accounts represented work done before withdrawal, so Westfall was not entitled to part of the accounts receivable on files the firm retained. The consistency of the arbiters' award shows honest, not dishonest, judgment.

We therefore conclude that Westfall has failed to show gross mistake in the arbi-

ters' decision not to award him part of the firm's accounts receivable and work in progress. However, Westfall argues that the arbiters made other gross mistakes.

 Westfall argues that the arbiters were grossly mistaken in ignoring the fiduciary duty Bailey and Williams legally owed Westfall and refusing to interpret the partnership agreement fairly toward Westfall as that duty required. In support of his argument Westfall points to the arbiters' observation that they were bound to apply the agreement as written and were not free to devise a different method for compensating Westfall at his withdrawal from the firm. Contrary to Westfall's argument, however, this conclusion was neither illegal nor unfair. Bailey and Williams, and Westfall certainly owed each other a fiduciary duty, but the existence of that obligation did not vitiate their agreement. Westfall presumably considered that agreement fair both to himself and his partners at the time he executed it. Although the arbiters found the agreement somewhat ambiguous, they interpreted it to effect what they determined to be the intentions of the parties. Their interpretation was neither in violation of the parties' mutual fiduciary duties nor unfair.

 Westfall also argues that the arbiters made a gross mistake in receiving into evidence two reports of Bailey and Williams' accountant after the arbitration hearing. The arbiters admitted the reports into evidence because they followed additional evidence submitted by Westfall after the hearing. The arbiters noted in their award that Westfall made no request to reopen the hearing to permit cross-examination of the reports. Furthermore, the arbiters explained that the reports were not critical to their decision. Even if the arbiters erred in admitting the reports into evidence, an issue we need not decide, that error did not affect their decision, was therefore harmless, and certainly was not a gross mistake.

Finally, Westfall argues generally that the arbiters' decision should also be overturned for "violations of Texas law, exceeding their powers, abuse of discretion, and

other independent grounds." Despite the breadth of this global contention, there appears to be no basis for it apart from Westfall's claims of gross mistake which we have already considered. Because we have found no merit in those claims, we likewise find no merit in Westfall's broad claim of otherwise unspecified error.

The trial court erred in denying Bailey and Williams' motion for summary judgment and in setting aside the arbitration award. As a matter of law, Westfall was not entitled to have that award vacated, and Bailey and Williams' motion for summary judgment should have been granted. We therefore reverse the judgment of the district court, reinstate the arbitration award, and render judgment that Westfall take nothing by his action.