**B.J. FARLEY, Appellant,**

v.

**Joe KLAUS, L. David Smith, Michael J. Smith, R. Stephen Ressling, & Klaus, Smith & Ressling, L.L.P., Appellees.**

No. 14–95–00870–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 10, 1997.

Rehearing Overruled June 12, 1997.

Joe S. Maida, Houston, for appellant.

Michael J. Smith, L. David Smith, Houston, for appellees.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

YATES, Justice.

In this appeal, we must decide whether a partnership agreement is ambiguous if it requires a cash basis method of accounting and entitles an expelled partner to the "book value" of the partnership interest "as determined by a complete inventory and accounting." Because we conclude this agreement is ambiguous as it relates to the accounts receivable of the partnership, we find the trial court erred in granting summary judgment, and we reverse the judgment of the trial court and remand it for further proceedings.

B.J. Farley, appellant, served as managing partner of a law partnership from its creation in 1986 until his expulsion by his four partners in 1992. He owned a 46.5% share of the partnership at the time he was expelled without cause. The parties do not dispute the right of the partners to expel Farley without cause. Farley sued the partnership and the other four partners (collectively "the law firm") under the partnership agreement. He asserted several claims, including the distribution of his share of the "book value" of the partnership assets and breach of fiduciary duty. The law firm brought a number of counter-claims, including a "negative capital account" claim and a declaratory judgment claim that the term "book value" is not ambiguous.

Farley claims the law firm's accounts receivable, the billed but uncollected charges, totaled approximately $348,000 at the time of his expulsion. The law firm claims the capital account of the law firm at the time of the expulsion was deficient by approximately $88,000. Whether these totals are correct is not clear from the record, but the exact totals are not necessary to the disposition of this appeal.

According to the law firm, the cash method of accounting employed by the law firm and dictated by the partnership agreement precludes the calculation of the accounts receivable into the book value of the firm. As a result, the law firm claims the accounts receivable have no book value, and the law firm claims Farley owes the law firm for his portion of the negative capital on hand when Farley was expelled in 1992. Farley contends the accounts receivable must be included in the book value of the law firm because a proper inventory and accounting cannot be conducted without them.

The trial court granted partial summary judgment on the law firm's declaratory judgment counter-claim and made the following conclusions as a matter of law:

1. That the Partnership Agreement between the Plaintiff and the Defendants which is the subject of this suit is a legal, valid and binding Agreement.

2. That the Partnership Agreement between the Plaintiff and the Defendants in this case exclusively governs the Plaintiff's right to payment for his interest in the partnership upon his expulsion.

3. That the term "book value" as contained in the Partnership Agreement is not ambiguous.

4. That the agreed method of accounting under the Partnership Agreement to determine the book value of the partnership upon the date of the expulsion of the Plaintiff is a cash basis method of accounting.

The case proceeded to trial on the remaining claims. On the day of trial, the trial court granted the law firm's motion in limine in its entirety.[1] Farley informed the trial court that its ruling precluded him from presenting evidence to the jury on his causes of action and that he would not be able to proceed as the plaintiff. The trial court rea-

---

1. The order in limine prevented Farley from presenting evidence of, among other things, the value of the accounts receivable of the partnership, the value of any work in progress of the partnership, and any expert or lay testimony concerning the book value of the partnership.

ligned the parties, and the law firm proceeded to trial on its counter-claims.

The jury found a zero balance in Farley's capital account at the time of his expulsion. It also found that the law firm's reasonable attorney's fees were zero. After the jury trial, the trial court entered a take nothing judgment against both parties. Farley brings two points of error complaining the trial court erred in granting the partial summary judgment in favor of the law firm. He also brings two points of error addressing the trial court's granting of the law firm's motion in limine. The law firm raises four points of error, contending the jury findings are erroneous.

In his first point of error, Farley argues the trial court erred in granting the law firm's partial interlocutory summary judgment because the term "book value" is an ambiguous term. In his second point of error, Farley contends the trial court erred in finding the cash basis method of accounting applied to determine the book value of the partnership for the purposes of expulsion. The standard for reviewing a motion for summary judgment is well settled: 1) the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; 2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and 3) every reasonable inference must be resolved in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

When courts construe a contract, courts strive to give effect to the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). Courts will read all of the provisions together and will be "particularly wary" of considering a portion of a contract isolated from the rest of the contract. *Id.* A court may construe a contract as a matter of law if it is unambiguous and can be given a certain or definite legal meaning or interpretation. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous when it is reasonably susceptible to more than one meaning or the meaning is uncertain and

doubtful. *Towers of Texas, Inc. v. J & J Sys., Inc.*, 834 S.W.2d 1, 2 (Tex.1992). The court must look at the contract as a whole in light of the circumstances present when the contract was entered to determine whether the contract is ambiguous. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Coker*, 650 S.W.2d at 394. If the contract contains an ambiguity, summary judgment is improper because the interpretation of the contract becomes a fact issue. *Coker*, 650 S.W.2d at 394.

■ An ambiguity can appear either on the face of the contract or as it is applied to a particular situation. *National Union Fire*, 907 S.W.2d at 520. This distinction is sometimes referred to as patent and latent ambiguities. *Id.* A patent ambiguity is evident on the face of the contract itself while a latent ambiguity arises "when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *Id.* It appears Farley is arguing the ambiguity is both patent and latent. He argues "book value" is inconsistent with other provisions in the agreement (patent ambiguity). He also contends the agreement is ambiguous regarding whether the accounts receivable will be calculated as part of the firm's book value and whether the cash basis of accounting applies when determining book value by a "complete inventory" (latent ambiguities).

■ The partnership agreement details the rights of an expelled partner to receive "book value" of the partner's partnership interest.

The expelled Partner shall be entitled to receive from the remaining Partners, as soon as practical after the effective date of his expulsion, *the book value of his Partnership interest as determined by a complete inventory and accounting of the Partnership affairs* as of the close of business on the effective date of the expulsion, less any value attributable to the good will of the Partnership business and less any damages, if the expulsion was caused by willful breach of this Agreement, sustained

by the remaining partners of the partnership because of such breach.

(emphasis added). The agreement also specifically states elsewhere "[t]he books of account of the Partnership shall be kept on a cash and calendar year basis." In response to the law firm's request for admissions, Farley admitted the books of account were kept on a cash basis.

Both sides cite authority which they believe supports their arguments addressing whether book value is ambiguous as used in the agreement. The law firm cites an opinion proclaiming " 'book value' is unambiguous and is susceptible of only one construction." *Chaffe v. Murray*, 492 S.W.2d 680, 684 (Tex. App—Corpus Christi 1973, writ ref'd n.r.e.).

> [Book value] is the value shown by the books of the business and no other value. It means the value that is arrived at by taking the total value of the assets as shown by its books and deducting therefrom the total liabilities.

> .     .     .     .     .

> A proper set of books is a set that is kept either in compliance with the accounting procedures that are spelled out in the agreement of the parties; or, as may be subsequently agreed to by the parties; or, in the absence of any such agreement, as may be prescribed by generally accepted accounting and bookkeeping principles.

*Id.* at 684. The law firm insists this language in *Chaffe* requires us to find the agreement is not ambiguous as long as it dictates the method of accounting. Because the parties explicitly chose a cash basis method of accounting, the law firm argues the matter is settled. However, *Chaffe* does not address whether a cash basis method of accounting prevents the inclusion of the accounts receivable into a determination of book value. It also did not interpret an agreement providing for book value of the partnership "as determined by a complete inventory and accounting." Thus, *Chaffe* is not controlling.

The law firm also cites a decision addressing a provision allowing the withdrawing partner the amount entitled "under normal bookkeeping procedures." *Bailey and Williams v. Westfall*, 727 S.W.2d 86, 88 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). An arbitration panel concluded the normal bookkeeping procedures did not include part of the firm's account receivable, and the withdrawing partner sued in district court to set aside the arbitration award. *Id.* at 89. The Dallas Court of Appeals refused to set aside the award, noting the arbitration panel based its decision on the fact that the firm utilized a cash basis method of accounting. *Id.* at 90.

This decision does not provide guidance in this appeal. The arbitration panel was a fact-finder. It was not determining whether the contract is unambiguous as a matter of law. Furthermore, the Dallas Court of Appeals upheld the arbitration award because it did not find the panel made a "gross mistake." *Id.* at 91. Gross mistake is a standard which implies bad faith or the failure to exercise honest judgment on the part of the arbitrator. *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.—Houston [14th Dist.] 1995, no writ). The standard we must apply to determine whether summary judgment was properly granted is a much different standard than gross mistake.

The cases cited by Farley also do not provide us with much guidance. One decision by this Court held "[b]ook value is an improper method of determining the value of partnership equipment on dissolution of the partnership." *Cheek v. Humphreys*, 800 S.W.2d 596, 599 (Tex.App.—Houston [14th Dist.] 1990, writ denied). However, in that case, the trial court determined partnership value using a book value formula rather than market value. *Id.* The partnership agreement was oral and the trial court could not rely upon a written agreement to determine the rights of the parties. *Id.* at 597. This Court concluded market value was the proper method of valuation, absent an agreement otherwise. *See id.* at 598. Because here the parties stipulated book value as the method of valuation, *Cheek* is distinguishable.

Similarly, Farley points to a plurality opinion by the Dallas Court of Appeals decided prior to *Bailey and Williams* concerning the value of contingency fee cases. *Bader v. Cox*, 701 S.W.2d 677 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The *Bader* court rejected the partnership's argument that the contin-

gency fee cases could not be included in the value of the partnership assets because it operated on a cash basis accounting method. *Id.* at 682. However, *Bader* relied upon the Texas Uniform Partnership act to govern the rights and duties of the partners. *Id.* 681. Thus, the *Bader* court was not constrained by the explicit agreement of the parties to provide book value upon dissolution and to use a cash basis method of accounting as Farley and the law firm agreed. *Bader* was distinguished on this basis in *Bailey and Williams. Bailey and Williams,* 727 S.W.2d at 90.

Because our research has revealed no case law directly on point, we must construe this agreement without the guidance of prior precedent. Farley makes a number of arguments suggesting the agreement is ambiguous on its face. Farley first argues the inclusion of goodwill into the calculation of the law firm's book value in paragraph 5.02(c) suggests the term is ambiguous. Farley argues the agreement cannot contain a clause including goodwill into the firm's book value, yet exclude the accounts receivable. The agreement provides that upon expulsion, the partner shall receive the book value of his partnership interest "less any value attributable to the goodwill of the partnership business." This does not make the agreement ambiguous. As the law firm points out, the clause is simply an unambiguous adjustment to the total received by the expelled partner. The agreement does not attempt to *include* goodwill into the formula for determining book value.

Farley also compares the expelled partner provision with the provision addressing the rights of a withdrawing partner. The withdrawing partner provision indicates the withdrawing partner will receive the balance available in "the capital and income accounts," but the partner will not receive "any share in uncollected charges received by the partnership subsequent to the effective date of such withdrawal." Farley asserts that because the uncollected charges are precluded in the withdrawal provision and are not addressed in the expelled partner provision, it evidences an intent by the partnership to allow the expelled partner to receive the proper share of the accounts receivable.

This does not create an ambiguity. The withdrawing partner provision does not allocate a portion of the *book value* to the withdrawing partner; it allocates the balance available in the capital and income accounts. Therefore, the agreement creates different formulas for these different circumstances. In addition, the withdrawing partner provision does not alter the cash basis method of accounting as required by the agreement. Even though the expelled partner provision does not specifically address accounts receivable as does the withdrawing partner provision, we cannot conclude that this difference between the provisions requires an expelled partner to receive a portion of the accounts receivable of the partnership. Thus, we cannot conclude this creates an ambiguity on the face of the agreement.

Along these same lines, Farley suggests the definition of books in the agreement creates an ambiguity. The agreement states "complete and accurate accounts of all transactions of the Partnership shall be kept in proper books." Farley argues he should be entitled to the accounts receivable because the books must account for *all* transactions. However, this provision is still consistent with the provision requiring the books to be kept according to the cash basis method of accounting. It requires all books to be accounted for by use of a cash basis method of accounting. These provisions do not create an ambiguity on their face.

It is not until the agreement is applied that an ambiguity becomes apparent. The ambiguity is created when the parties attempt to value the accounts receivable into the book value of the firm using a cash basis method of accounting. In his response to the motion for summary judgment, Farley attached the affidavits of William Shoemaker and Rose Cantú, both Certified Public Accountants. Shoemaker, in his affidavit, swore "the adoption of the cash basis of accounting does not, in fact, control or dictate what 'book value' will be or how it will be determined." Cantú also swore to the following statement:

It is also my opinion that the use of a cash basis of accounting by the law partnership

of Farley, Klaus & Smith does not dictate an evaluation of accounts receivable and expenses incurred by the law partnership on behalf of their clients to a zero value. Although the cash basis method of accounting is used by service companies, the generally accepted accounting principle method used is the accrual basis. The cash basis method is mainly utilized for tax purposes and does not in fact control or determine what "book value" will be or how it will be determined.

In addition, Shoemaker indicated why the book value clause should not be considered with the cash method of accounting clause.

> The partnership agreement specifically states that the expelled partner is entitled to receive the book value of his Partnership interest as determined by a "complete inventory and accounting of the Partnership affairs" as of the close of business on the effective date of the expulsion.

> If the partnership agreement intended that the book value would be determined ... [on the cash basis] then there would be no need for the words "complete inventory and accounting of the partnership affairs." Not being a lawyer but from the standpoint of having reviewed many of these agreements over my 40 years, I fail to see that book value would mean anything but "a complete inventory of all assets and liabilities."

> . . . .

> The partnership seems to have attempted to clarify this particular problem [of what the parties meant by book value] by using the following words "complete inventory and accounting of the partnership interests."

> If the agreement meant "on the cash basis, as used on the Federal income tax return," it would have been simple to say that; instead the agreement said a "complete inventory" which obviously means the items not currently on the books and income tax return.

These statements suggest the book value clause is ambiguous when addressing the accounts receivable issue. If book value is construed with the cash basis clause, as the law firm argues, the expelled partner is probably not entitled to a portion of the accounts receivable because those assets are not yet calculated into the books. Both the Shoemaker and the Cantú affidavits suggest, however, that book value based on a cash basis accounting method does not necessarily require the value of the accounts to be zero. Therefore, the meaning and construction of this clause as applied *with* the cash basis accounting method clause is "uncertain and doubtful." *Coker,* 650 S.W.2d at 393. Furthermore, because book value can be construed with the cash basis clause, as the law firm asks, or it can be construed in light of the "complete inventory" clause with a different result, it is susceptible to "more than one meaning." *Id.* Because of this ambiguity in the agreement, the trial court erred in granting summary judgment because the interpretation of the agreement is a fact issue. *Id.* at 394.[2] We sustain Farley's first two points of error.

■ Because we are reversing the order granting summary judgment, we do not address Farley's third and fourth points of error regarding the trial court's ruling on the motion in limine. We also do not address the law firm's points of error regarding the jury finding. A partial interlocutory summary judgment is not appealable unless the trial court orders that portion of the case severable. *City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex.1988). Otherwise, the appellate court can only address the validity of granting the summary judgment when it merges with the final judgment disposing of

---

**2.** Farley also swore in an affidavit that during his tenure as managing partner of the law firm, the cash basis method was only used for income tax purposes and that it was never the intent of the parties to value the accounts receivable as zero for an expelled partner. This statement alone does not create an ambiguity in the agreement because the intent of the parties does not control unless we first determine an ambiguity is present in the agreement. "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, ... and admit extraneous evidence to determine the true meaning of the contract." *National Union Fire Ins.,* 907 S.W.2d at 520. Because the finding of an ambiguity alone creates a fact issue precluding summary judgment, this evidence is not relevant to the determination of this appeal.

all issues and parties. *Id.* Because the summary judgment is merged with the final judgment and because the unique issues in this case require Farley's claims and the law firm's counter-claims to be addressed together, the final judgment must be reversed and remanded for further proceedings.