TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00633-CV







John L. Daniewicz, Preston S. Brown, F. Lynn Whitehead, Gary L. Warren

and B. Randall Jean, Appellants


v.



Thermo Instrument Systems, Inc.; TN Technologies, Inc.; Ramsey Technology, Inc.


(a/k/a Thermo Sentron); Thermedics, Inc.; and Epsilon Industrial, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-09715, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING 






 Appellants John L. Daniewicz, Preston S. Brown, F. Lynn Whitehead, Gary L.
Warren, and B. Randall Jean (collectively the "CannonBear Group") appeal from a judgment
confirming the clarification of an arbitration award. The arbitration arose out of a contract dispute
between the CannonBear Group and appellees Thermo Instrument Systems, Inc.; TN
Technologies, Inc.; Ramsey Technology, Inc. (a/k/a Thermo Sentron); Thermedics, Inc.; and
Epsilon Industrial, Inc. (collectively "Thermo") (1) over royalties due on a series of products. In
two points of error, the CannonBear Group contends that the trial court erred in confirming the
arbitration panel's clarification order, which the CannonBear Group argues was actually a
modification of the original order, and in refusing to order an independent accounting of royalties
owed to the CannonBear Group. We will affirm the trial court's judgment.


BACKGROUND

 In 1986, the CannonBear Group formed CannonBear, Inc., which developed and
marketed industrial microwave measurement devices. In 1989, the CannonBear Group sold
CannonBear, Inc. to Thermo for $2,000,000. Pursuant to the contract, (2) Thermo promised to use
its "best efforts" in developing and promoting CannonBear products and agreed to pay royalties
on the sales of those products and their derivatives for twelve years. (3) The parties agreed that any
controversy or claim arising out of, or related to the contract, or its breach, would be settled by
arbitration.

 In 1996, the CannonBear Group initiated an arbitration proceeding, alleging that
Thermo had failed to use its best efforts to develop and promote the CannonBear products. The
CannonBear Group also alleged that the RCM, a new Thermo product, was derived from
technology characteristic of CannonBear products and thus the CannonBear Group was entitled
to royalties from all past and future sales of the RCM.

 After an extensive proceeding, the arbitration panel determined that Thermo had
breached its contractual obligation to use its best efforts in developing and marketing the
CannonBear products. Additionally, the panel concluded that the RCM was a derivative of the
original CannonBear products. Consequently, the panel issued the following award:


[Thermo] shall be liable jointly and severally to pay to [the CannonBear Group] the
sum of Four Million Dollars and No Cents ($4,000,000.00) as damages under their
contracts relating to the CannonBear products and the GMS product.


Thermo shall be liable jointly and severally to pay to CannonBear Group all
royalties payable under their contracts for the balance of the term of the contracts
for both GMS and microwave products.


Thermo shall be liable jointly and severally to pay to CannonBear group all
royalties to which they are entitled to, or which they may become entitled to, under
the contract on sales of the RCM (less any amounts attributable to the process seal
on the RCM product which have been paid by Thermo to CannonBear Group).


Thermo shall be liable jointly and severally to pay to CannonBear Group the sum
of Seven Hundred and Fifty Thousand Dollars and No Cents ($750,000.00) for
attorney's fees.


* * *


This Award is in full settlement of all claims and counterclaims submitted to this
Arbitration. All claims not expressly granted herein are, hereby denied.



(Emphasis added.) Pursuant to the award, Thermo paid the CannonBear Group $4,000,000 "as
damages under their contracts relating to the CannonBear products and the GMS product,"
$750,000 in attorney's fees, and $132,997.20 for past-due royalties on the RCM.

 After issuance of the award, the CannonBear Group sent Thermo a letter asserting
that the arbitration award was merely a "starting place" in resolving the parties' dispute. The
letter indicated that the CannonBear Group viewed the award as compensation only for Thermo's
past breach of the "best efforts" clause. Thus, the CannonBear Group argued that in order to
avoid future litigation, Thermo must expand and market the CannonBear product line through the
end of the royalty period. 

 In response to the letter, Thermo filed a Motion to Clarify requesting that the
arbitration panel clarify its award to reflect that the $4,000,000 award covered all of the
CannonBear Group's damages for Thermo's failure to use their "best efforts," both in the past and
in the future. In response to Thermo's motion, the CannonBear Group noted that the original
award required that Thermo pay royalties "payable under their contracts for the balance of the
term of the contracts." The CannonBear Group argued that the panel had thus unambiguously
ordered Thermo to continue to comply with the "best efforts" clause for the remainder of the
contract term. The CannonBear Group further argued that Thermo's request constituted an
impermissible modification of the original award rather than a clarification, and the panel had no
authority to revisit the merits of the controversy.

 The panel rejected the CannonBear Group's interpretation and issued the following
clarification order:


We hereby clarify the Original Award to (a) specifically state that the Original
Award was not solely an award for past due royalties; it covers all of the
CannonBear Group's damages for Thermo's failure to use their best efforts, both
to date and in the future, for the entire twelve-year royalty periods respectively
applicable to both the CannonBear Products and the GMS Product; and to (b) make
it clear that except as set forth in the Original Award, no further payments or
obligations of any kind are required of Thermo.



The CannonBear Group filed a petition in district court requesting that the clarification order be
vacated and the original award confirmed. The CannonBear Group argued that the arbitration
panel had exceeded its authority by reconsidering the merits of the original controversy and
fundamentally altering the substance of the award. The CannonBear Group also argued that by
eliminating any "best efforts" obligation for future marketing of CannonBear products, the panel
had rewritten the parties' original contract by granting a remedy not requested by either party. 
Finally, the CannonBear Group asked the court to order an independent accounting of Thermo's
sales of the RCM to ensure that the CannonBear Group had been paid sufficient royalties.

 Thermo moved for summary judgment on all of the CannonBear Group's claims. 
The trial court granted summary judgment, ruling that the arbitration panel's second order was
a clarification order and that the panel had authority to issue it. The trial court also denied the
CannonBear Group's request for an accounting, ruling that any new dispute must be settled
through arbitration in accordance with the original contract's arbitration clause. The trial court
incorporated both the original award and the clarification order as part of its final judgment. The
CannonBear Group appeals that judgment.


DISCUSSION


 We initially note that Texas law favors the arbitration of disputes. See Brazoria
County v. Knutson, 176 S.W.2d 740, 743 (Tex. 1943). The award of an arbitration panel is
entitled to great deference in a court of law lest disappointed litigants seek to overturn every
unfavorable arbitration award in court. (4) See Bailey & Williams v. Westfall, 727 S.W.2d 86, 90
(Tex. App.--Dallas 1987, writ ref'd n.r.e.). Accordingly, every reasonable presumption will be
indulged to uphold the arbitration proceeding. J.J. Gregory Gourmet Servs., Inc. v. Antone's
Import Co., 927 S.W.2d 31, 33 (Tex. App.--Houston [1st Dist.] 1995, no writ).


The Clarification Order 

 Arbitrators may modify or correct an award to clarify the award. Tex. Civ. Prac.
& Rem. Code Ann. § 171.054(a)(2) (West Supp. 1999). The CannonBear Group attacks the
clarification order of the arbitration panel from two perspectives, arguing that the clarification
order must be vacated because: (1) it actually changed the nature of the original award rather than
merely clarifying it; and (2) it awarded relief not requested by either party.

 The CannonBear Group first contends that the arbitrators in this case exceeded their
authority to clarify the original award by altering the parties' substantive rights in the clarification
order. The CannonBear Group argues that the only logical interpretation of the panel's original
award is that Thermo continued to be obligated to use its best efforts in developing and marketing
the CannonBear products. They further argue that because royalties are a measure of damages for
Thermo's failure to use its best efforts, the arbitration panel's order that Thermo continue to pay
"royalties payable under the contracts" indicates the arbitrators believed that future damages had
not yet accrued. The argument continues that an obligation to continue to pay royalties under the
contract necessarily carries with it an obligation to use best efforts in acquiring those royalties.

 Thus, the CannonBear Group contends that given its interpretation of the original
award that Thermo retained an obligation to use its best efforts, the arbitration panel impermissibly
modified the award in the clarification order by eliminating Thermo's obligation to use its best
efforts. As a result, the arbitration panel exceeded the scope of a permissive clarification as
established by section 171.054(a)(2), and the clarification order should be vacated.

 Thermo responds, and the trial court agreed, that the original award compensated
the CannonBear Group not only for past royalties on CannonBear products and their derivatives
and for the past breach of the "best efforts" clause, but also for an anticipatory breach of the "best
efforts" clause attributable to future conduct. Thermo argues that the clarification order merely
restates the substance of the award in clear, unequivocal language. Under this interpretation, the
clause "all royalties payable under the contracts" contained in the original order refers only to the
remaining obligation of Thermo to pay royalties on any sale of existing CannonBear products and
the GMS product; it does not impose a continuing requirement to use its "best efforts." In
refusing to vacate the clarification order, the trial court remarked on the logical basis for the
award; given the fact that new technology had already overtaken the technology characteristic of
the CannonBear products, it would have made little sense to require Thermo to use its best efforts
to market dated technology, especially when the contract termination date was fast approaching.

 Of course, the best source to determine the intention of the original award remains
the arbitration panel itself. And, we must accord great deference to the arbitration panel and
indulge every reasonable presumption in its favor. Even assuming the CannonBear Group's
interpretation is reasonable, it is certainly not the only reasonable interpretation. The existence
of this suit implies that some clarification may have been necessary, and the arbitration panel
issued a self-styled "clarification" order which was not clearly inconsistent with its original award. 
The panel clarified that the original award covered the CannonBear Group's past and future
damages for Thermo's failure to use its best efforts. Nothing in the record gives us reason to
believe that the panel in fact modified the original award and disguised it as a clarification. We
hold that the clarification order merely restated the intention of the original award and was not an
impermissible modification.

 The CannonBear Group next argues that by ordering Thermo to continue paying
royalties while eliminating Thermo's obligation to use its best efforts, the panel partially rescinded
and reformed the parties' original contract, and thereby abused its authority because such a remedy
was not requested by either party. The CannonBear Group cites to this Court a line of cases that
it contends stands for the proposition that an arbitration panel may only award relief specifically
asked for by the parties, otherwise the award is void as to such matters. See Gulf Oil Corp. v.
Guidry, 327 S.W.2d 406, 408 (Tex. 1959) ("the authority of arbitrators is derived from the
arbitration agreement and is limited to a decision of the matters submitted therein either expressly
or by necessary implication."); see also City of Baytown v. C.L. Winter, Inc., 886 S.W.2d 515,
518 (Tex. App.--Houston [1st Dist.] 1994, writ denied).

 Guidry involved an arbitration dispute over the alleged discriminatory dismissal of
a Gulf Oil union employee. The sole issue submitted to arbitration was whether Gulf Oil's
discharge of Guidry was for "cause" within the meaning of the union contract. Guidry, 327
S.W.2d at 407. The arbitrator's award found that the discharge was discriminatory, but went on
to order Guidry demoted and award backpay to Guidry calculated at the rate for the demoted
position. Id. The supreme court vacated those provisions of the award that demoted Guidry and
awarded backpay, stating: "[W]hen arbitrators attempt to determine matters not submitted to their
determination, as to such matters the award is void." Id. at 408.

 We read the holding of Guidry and its progeny more narrowly than does the
CannonBear Group. Guidry allows arbitrators to award relief only where such relief is an issue
to be determined. It does not restrict the scope of an arbitrator's authority to craft an award to the
specific relief requested by the parties. In fact, arbitrators have traditionally enjoyed broad leeway
to fashion remedies. See Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918
F.2d 1215, 1219 (5th Cir. 1990). In the present case, the CannonBear Group asked the arbitration
panel to find a breach of contract, which the panel found. The CannonBear Group also asked for
damages commensurate with that breach, which the panel awarded. Unlike Guidry, the arbitration
panel in this case did not attempt to determine matters not submitted for its determination; the
panel here clearly had the authority to fashion a remedy for the breach of the contractual
requirement that Thermo use its "best efforts."

 Furthermore, we do not agree that the arbitration panel only partially rescinded or
rewrote the parties' original contract; rather, the panel rescinded the contract due to Thermo's
breach, but incorporated many of the contractual terms in awarding its remedy. After determining
that Thermo had breached its contractual obligation to use its "best efforts," the panel awarded
damages as follows: $4,000,000 plus past and future royalties on the RCM plus any future
royalties on the CannonBear products without Thermos's best efforts. The panel recognized that
the circumstances would not allow for the parties to be placed in their same contractual stances
as before the breach; not only had Thermo attempted to circumvent the contract with its own
product, the RCM, but the overall technology in the industry had changed. Thus, the panel
awarded damages for breaching the "best efforts" clause with a lump sum payment, but
incorporated the existing contractual terms into its award regarding the payment of royalties. It
fashioned a judgment that remedied those wrongs that could no longer be reasonably governed by
the original contract and incorporated the contractual terms for those areas that still fit. We hold
that the arbitration panel was within its authority to fashion the remedy as it did. Having rejected
the CannonBear Group's two theories for vacating the trial court's judgment, we overrule its first
point of error.


Accounting for Sales of the RCM

 In its second point of error, the CannonBear Group argues that the trial court should
have ordered an independent accounting of Thermo's sales of the RCM as a part of the court's
confirmation of the original arbitration award. In accordance with the original award, Thermo
paid the CannonBear Group $132,997.20 for royalties on past sales of the RCM. However, the
CannonBear Group contends that this amount was incorrect and asked the trial court to order an
independent accounting of Thermo's sales of the RCM. The trial court denied the request, holding
that the dispute must be arbitrated in accordance with the contract arbitration clause.

 The original contract's arbitration clause provided for arbitration for any
"controversy or claim arising out of, or relating to the agreement." The CannonBear Group's
contention that Thermo undervalued its past sales of the RCM and therefore an independent
accounting was necessary to determine the correct royalty payment clearly falls within the confines
of the contract arbitration clause. Because this claim was first presented to the trial court, the trial
court correctly held that the request for an accounting was premature because the dispute must first
be submitted to arbitration. CannonBear Group's second point of error is overruled.


CONCLUSION

 The trial court did not err in finding that the arbitration panel's clarification order
merely restated the intent of the original order and was not an impermissible modification. 
Moreover, the trial court did not err in finding that the arbitration panel had the authority to award
damages for both past and anticipatory breaches of the "best efforts" clause and also to order
continued royalty payments according to the original contractual terms. Finally, because the
CannonBear Group's claim for an independent accounting of RCM sales had not yet been
submitted to arbitration, the trial court correctly found the request to be premature. Having
overruled all points of error, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: May 20, 1999

Publish

1. The CannonBear Group originally sold CannonBear Inc. to Ramsey Technology Inc.
("Ramsey"). Thermo Instrument Systems, Inc. acquired CannonBear Inc. when it purchased
Ramsey. In the interest of clarity, we will refer to all appellees as "Thermo."
2. The transaction involved three interrelated agreements: the Asset Purchase Agreement; the
Option and Royalty Agreement; and the Employment and Royalty Agreement. We will refer to
the agreements collectively as the "contract."
3. There were two sets of products on which Thermo was obligated to pay royalties: the
existing CannonBear products and a developmental product referred to as "GMS." Thermo
agreed to pay royalties on the existing CannonBear products through July 6, 2001 and on the GMS
through January 9, 2005. We will refer to the products collectively as the "CannonBear
products."
4. Appellant argues that because it is the clarification order and not the original award which
is the subject of this appeal, it is due no deference and should be reviewed de novo. This
interpretation, however, would create a loophole and allow relitigation by disappointed parties of
unfavorable arbitration awards, as evidenced by this case.


the RCM plus any future
royalties on the CannonBear products without Thermos's best efforts. The panel recognized that
the circumstances would not allow for the parties to be placed in their same contractual stances
as before the breach; not only had Thermo attempted to circumvent the contract with its own
product, the RCM, but the overall technology in the industry had changed. Thus, the panel
awarded damages for breaching the "best efforts" clause with a lump sum payment, but
incorporated the existing contractual terms into its award regarding the payment of royalties. It
fashioned a judgment that remedied those wrongs that could no longer be reasonably governed by
the original contract and incorporated the contractual terms for those areas that still fit. We hold
that the arbitration panel was within its authority to fashion the remedy as it did. Having rejected
the CannonBear Group's two theories for vacating the trial court's judgment, we overrule its first
point of error.


Accounting for Sales of the RCM

 In its second point of error, the CannonBear Group argues that the trial court should
have ordered an independent accounting of Thermo's sales of the RCM as a part of the court's
confirmation of the original arbitration award. In accordance with the original award, Thermo
paid the CannonBear Group $132,997.20 for royalties on past sales of the RCM. However, the
CannonBear Group contends that this amount was incorrect and asked the trial court to order an
independent accounting of Thermo's sales of the RCM. The trial court denied the request, holding
that the dispute must be arbitrated in accordance with the contract arbitration clause.

 The original contract's arbitration clause provided for arbitration for any
"controversy or claim arising out of, or relating to the agreement." The CannonBear Group's
contention that Thermo undervalued its past sales of the RCM and therefore an independent
accounting was necessary to determine the correct royalty payment clearly falls within the confines
of the contract arbitration clause. Because this claim was first presented to the trial court, the trial
court correctly held that the request for an accounting was premature because the dispute must first
be submitted to