Opinion issued March 8, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01034-CV

———————————

FCA Construction Company, LLC, Appellant

V.

J&G
Plumbing Services, LLC, Appellee



 



 

On Appeal from the 164th District Court

Harris County, Texas



Trial Court Case No. 2010-58685

 



 

MEMORANDUM OPINION

          FCA
Construction Company, LLC appeals from the trial court’s confirmation of an
arbitration award in favor of J&G Plumbing Services, LLC. In two issues,
FCA contends that the trial court should have vacated the arbitration award on
grounds of (1) “evident partiality” under section 171.088 of the Texas Civil
Practices and Remedies Code and (2) “gross mistake” under Texas common law. We
affirm the trial court’s judgment.

Background

          FCA
hired J&G as a plumbing subcontractor on the construction of a fitness
center in Humble, Texas. Disputes arose between them, and FCA ultimately
terminated J&G and hired a new plumbing subcontractor. The subcontract
between FCA and J&G contained a
arbitration provision, and the parties submitted their dispute to final and
binding arbitration. They selected William Andrews as their arbitrator. Before
the arbitration began, Andrews sent counsel for FCA and J&G a letter
disclosing his existing relationship with Grady Schneider, LLP, counsel for J&G. The letter stated:

Last year, Grady &
Schneider, with my assistance, represented the husband of my wife’s niece in
the trial of a serious personal injury case. The case was tried to verdict and
has since settled. Currently, Grady & Schneider is representing at least
two of our clients in commercial and/or construction cases we have referred to
them. Over the past ten years, our firm referred several clients to this firm.
I personally know the two named partners, Keith Grady and Peter Schneider.

 

The above disclosure will
not impact or impair my ability to serve as a fair and impartial arbitrator in
this matter.

 

After receiving this disclosure, FCA nevertheless
agreed to have the arbitration heard by Andrews.

After three days of arbitration
hearings, Andrews entered a final arbitration award. Andrews awarded FCA
nothing on its claims against J&G. He awarded J&G $89,625 on its
wrongful termination and breach of contract claims against FCA, plus $40,000 in
reasonable attorney’s fees. The trial court confirmed the arbitration award. 

Standard of Review

Review of an arbitration award is “extraordinarily narrow.” E. Tex. Salt Water Disposal Co., Inc. v. Werline, 307 S.W.3d 267, 271 (Tex. 2010); see also IPCO-G.&C. Joint Venture v. A.B. Chance Co., 65 S.W.3d 252, 256 (Tex. App.—Houston
[1st Dist.] 2001, pet. denied) (stating that review is “extremely narrow”). Every
reasonable presumption must be indulged to uphold the arbitrator’s decision,
and none is indulged against it. CVN Group, Inc. v.
Delgado, 95 S.W.3d 234, 245
(Tex. 2002); New Med. Horizons II, Ltd. v. Jacobson, 317 S.W.3d 421, 428
(Tex. App.—Houston [1st Dist.] 2010, no pet.). Review of an arbitration
award is so limited that even a mistake of fact or law by the arbitrator is not
a proper ground for vacating an award. Universal Computer
Sys., Inc. v. Dealer Solutions, L.L.C., 183 S.W.3d 741, 752 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied). Generally, whether a trial
court should have vacated an arbitration award is a question of law, which we
review de novo. Swonke v. Swonke, No. 01-09-00059-CV, 2011 WL
1584809, at *4 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.) (mem. op. on reh.) (citing Henry v. Halliburton Energy Servs.,
Inc., 100 S.W.3d 505, 508
(Tex. App.—Dallas 2003, pet. denied); Thomas James Assocs., Inc. v. Owens, 1 S.W.3d 315, 319–20 (Tex. App.—Dallas
1999, no pet.)).

Evident Partiality

          Section
171.088(a)(2)(A) of the Texas Civil Practices and
Remedies Code (CPRC) instructs a trial court to vacate an arbitration award if
“the rights of a party were prejudiced by . . . evident partiality by an
arbitrator appointed as a neutral arbitrator[.]” Tex. Civ. Prac. & Rem. Code §
171.088 (West 2011). The Texas Supreme Court announced the standard for
evaluating whether a purportedly neutral arbitrator selected by the parties
exhibits “evident partiality” in Burlington North Railroad Co. v. TUCO Inc., 960 S.W.2d 629, 636 (Tex. 1997). The
Court recognized that the most capable arbitrators are often those “with
extensive experience in the industry, who may naturally have had past dealings
with the parties.” Id. at 635. Thus,
the Court rejected a “per se” disqualification where the arbitrator has a business
relationship with a party. Id. “Instead,
the competing goals of expertise and impartiality must be balanced.” Id. 

This balancing should be performed by the parties before the
arbitration, not by the courts after the arbitration. Id. “The judiciary should minimize its role in arbitration as judge
of the arbitrator’s impartiality. That role is best consigned to the parties,
who are the architects of their own arbitration process, and are far better
informed of the prevailing ethical standards and reputations within their
business.” Id. at 635–36 (quoting Commonwealth Coatings Corp. v. Cont’l Cas. Co., 393 U.S.
145, 151, 89 S. Ct. 337, 340 (1968)). But the parties’ ability to accurately
balance these interests is dependent on access to relevant information which
might reasonably affect the arbitrator’s partiality. TUCO, 960
S.W.2d at 636. Thus, the standard Texas courts apply in determining
whether a purportedly neutral arbitrator selected by the parties
exhibits “evident partiality” is whether the arbitrator “does not disclose
facts which might, to an objective observer, create a reasonable impression of
the arbitrator’s partiality.” Id. When
an arbitrator has failed to disclose such facts, “evident partiality” is
established by the non-disclosure itself, regardless of whether the undisclosed
information necessarily establishes partiality or bias. Id. 

          FCA does not contend that Andrews
failed to disclose any facts. Instead, FCA urges us to adopt a second standard
for establishing evident partiality under section 171.088(a)(2)(A), adopted by
the El Paso Court of Appeals in Las
Palmas Medical Center v. Moore, 2010 WL 3896501, *12 (Tex. App.—El Paso
2010, pet. denied).[1] In
Las Palmas, the El Paso court looked
to federal law to determine that “evident partiality” can be shown by “actual
bias” in addition to nondisclosure. Id.
The “actual bias” test adopted in Las
Palmas requires a party asserting “actual bias” to produce “specific facts”
demonstrating that “a reasonable person would have concluded that the
arbitrator was partial to one party.” Id.
This Court has not addressed whether “evident partiality” can be
established based on a showing of “actual bias.” We need not decide that issue
here because FCA had not met its burden of demonstrating “actual bias” under
that test.

          FCA’s argument that there was “actual
bias” in the arbitration proceeding is as follows:

As reflected by the transcript, Arbitrator Andrews was
anything but “fair and impartial” during the course of the arbitration
proceeding. Indeed, Arbitrator Andrews abandoned his role as a neutral
arbitrator, and instead assumed an adversarial role against FCA by
cross-examining its witnesses and voicing displeasure when these witnesses
refused to recant their testimony. Arbitrator Andrews did not subject any of
J&G’s witnesses to cross-examination, and certainly never challenged their
veracity.

 

The record demonstrates that Andrews participated actively
in the hearing, questioning witnesses, managing the presentation of evidence,
and controlling the procedure of the hearing. Andrews questioned witnesses from
both sides and made decisions on evidence and procedure that were sometimes
favorable to one side and sometimes favorable to the other side. To the extent
Andrews may have asked more questions of FCA’s witnesses, we will not impute
partiality on that basis alone, especially because FCA’s witnesses testified
first—Andrews may simply have had more questions at the earlier stages of the
evidence. FCA does not identify its basis for categorizing Andrews’s
questioning of its witnesses as “cross-examination” or explain how Andrews’s
questioning of J&G’s witnesses does not constitute such
“cross-examination.” Nor does FCA identify what statements by Andrews
constituted “voicing displeasure when [FCA’s] witnesses refused to recant their
testimony.” As the fact-finder, Andrews is free to determine which witnesses’ testimony
was credible and which witnesses’ testimony was not. See Ouzenne v. Haynes, No. 01-10-00112-CV,
2011 WL 1938430, *2 (Tex. App.—Houston [1st Dist.] May 12, 2011, no pet.) (mem. op.). 

Thus, even if we were to adopt the El Paso court’s “actual
bias” test, FCA’s allegations do not arise to the level of producing “specific
facts” from which a reasonable person would conclude that the arbitrator was
partial to one party. 

Moreover, FCA has identified no Texas or federal authority
for the proposition that we may infer bias based on an arbitrator’s questioning
of one side’s witnesses more extensively than the other side’s. Cf. Ballantine Books, Inc. v. Capital Distrib. Co., 302 F.2d 17, 21 (2nd Cir. 1962)
(rejecting “evident partiality” complaint under federal standard when
arbitrator allegedly “usurped”  role of
opposing party’s counsel by questioning party’s witnesses throughout
proceeding); Matter of Arbitration Between Advest,
Inc. & Asseoff, 92 CIV. 2269 (KMW), 1993 WL
119690, at *2 (S.D.N.Y. Apr. 14, 1993) (rejecting “evident partiality”
complaint under federal standard when arbitrator “had to be admonished for
taking over the direct examination of [party’s] witnesses and asking them leading
questions designed to fortify the [party’s] case.”).

          We overrule FCA’s first issue.

Gross Mistake

Texas common law allows a trial court to set aside an
arbitration award if the arbitrator’s decision is tainted by fraud, misconduct,
or “gross mistake as would imply bad faith and failure to exercise honest
judgment.”[2]
IPCO-G.&C. Joint Venture, 65 S.W.3d at 256. Gross mistake
results in a decision that is arbitrary or capricious; an honest judgment made
after due consideration given to conflicting claims is not arbitrary or
capricious, even if the judgment is erroneous. Universal Computer Sys.,
183 S.W.3d at 752 (quoting Bailey &
Williams v. Westfall, 727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref’d n.r.e.)). This Court may
not vacate an arbitration award merely because the award is based on a mistake
of fact or law. Id. 

FCA essentially contends that the contract language and
undisputed facts establish its right to recover on its breach of contract claim
and defeat J&G’s right to recover. FCA asserts that Andrews committed
“gross mistake” by concluding otherwise. FCA’s breach of contract claim rested
on allegations that J&G failed to complete work by specific dates and failed
to keep the project clear of liens filed by its subcontractors and suppliers.
J&G claimed, on the other hand, that its alleged breaches were not material
breaches or events of default that entitled FCA to terminate the subcontract;
therefore, J&G asserted that FCA breached the contract by improperly
terminating J&G. J&G also asserted that its failure to pay
subcontractors and suppliers was caused by FCA’s improper termination of the
subcontract. 

The crux of the Andrews’s decision was the materiality of
J&G’s alleged breaches of the subcontract. Andrews concluded that J&G’s
alleged breaches were not material. As a result, he concluded that (1) the alleged
breaches did not entitle FCA to breach of contract damages and did not justify
FCA’s termination of J&G and (2) FCA’s termination of J&G was wrongful
and material, entitling J&G to breach of contract damages. FCA asserts that
Andrews’s conclusion that J&G’s breaches were not material was “absurd” and
contrary to the express terms of the subcontract and unspecified evidence
presented at the hearing. In support of this position, FCA points out that the subcontract
expressly provides that “[t]ime is of the essence of
the Subcontractor’s obligations under the Contract Documents.” 

In his arbitration award, Andrews concluded that FCA
“place[d] undue reliance” on this contract language, treating it as “a
fail-safe for proof of facts required to establish a material breach of
contract by J&G.” Andrews further determined that the “credible evidence
adduced at the hearing does not support finding J&G materially breached the
Subcontract” and that “FCA continually waived this date as its own substantial
completion date with the Owner of the Project was extended on more than one
occasion.” Andrews discussed the evidence supporting his conclusion, including
the lack of a customary project schedule, the absence of documentation that
would be expected before making the decision to terminate a subcontractor, the
“sketchy and vague” testimony of FCA’s witnesses, and FCA’s failure to rely on
late performance in its notice of default to J&G. Instead, the notice
alleged that J&G had defaulted by failing to “supply sufficient skilled
workers, sufficient equipment, or materials of proper quality as determined by
[FCA]”—an alleged default Andrews found to be contrary to the evidence. 

If we were to adopt FCA’s contention that the “time is of
the essence” provision of the subcontract precluded Andrews from determining
that J&G’s failure to comply with deadlines for completion of work, we
would be replacing Andrews’s construction of the subcontract with our own. But
“[i]t is not our province to determine the proper
construction of the parties’ [subcontract].” Universal Computer Sys.,
183 S.W.3d at 753. “Instead, our review is limited to whether [Andrews’s]
failure to adopt [FCA’s] interpretation of the [subcontract] constitutes bad
faith or a failure to exercise honest judgment.” Id.; see also Chambers v. O’Quinn, No. 01-05-00635-CV,
2006 WL 2974318, *5 (Tex. App.—Houston [1st Dist.] Oct. 19, 2006, no pet.) (mem. op.) (“alleged
error in the application of substantive law by the arbitrator during the
proceedings in arbitration is not reviewable by the court on a motion to vacate
an award.”). 

The record contains conflicting evidence as to the
interpretation of the subcontract and the materiality of J&G’s breach, as
discussed in the arbitration award. The parties were given an opportunity to
brief the materiality issue for Andrews, and J&G submitted substantial
legal analysis of the materiality issue and the effect of the “time is of the
essence” language in the contract. Additionally, FCA does not address Andrews’s
conclusion that FCA waived compliance with the substantial completion deadline
in the subcontract as its own substantial completion deadline was extended, nor does it address the evidence that the
substantial completion date was linked to the opening date for the gym, which
was moved back during the project.

FCA’s complaint that the arbitrator disregarded FCA’s
unspecified “detailed testimony and voluminous exhibits” is likewise an attack
on whether Andrews correctly determined the facts and the law, but does not
tend to show bad faith or a failure by Andrews to exercise honest judgment. See Ouzenne, 2011 WL 1938430, at
*2. “[C]ontentions that an arbitrator disregarded even
uncontroverted testimony may show a mistake of fact or law, but do not rise to
the level of gross mistake.” Id. (citing
Graham–Rutledge & Co. v. Nadia Corp., 281 S.W.3d 683, 689 (Tex. App.—Dallas 2009, no pet.)). Additionally,
judging the credibility of the witnesses and choosing who to believe or
disbelieve is the sole province of Andrews, as the fact-finder. See id. (citing
Xtria L.L.C. v. Intern. Ins. Alliance, Inc., 286 S.W.3d 583, 597 (Tex. App.—Texarkana
2009, pet. denied)).

Moreover, Andrews’s decision rests largely on customs and
practices in the construction industry. Having a dispute adjudicated by a
decision maker with industry expertise is one of the advantages offered by
arbitration. See TUCO, 960
S.W.2d at 635. That advantage is undercut if courts may second-guess the
arbitrator’s assessment of such issues, particularly when the court has heard
no evidence on the customs and practices of the industry. Cf. Monday v. Cox, 881 S.W.2d 381, 385 (Tex. App.—San
Antonio 1994, writ denied) (“The courts are not permitted to second-guess the
correctness of an arbitrator’s decision on the merits.”).

FCA’s complaints are essentially arguments that Andrews
erred in applying the law and in determining the facts. But mistake of fact or
law is not a basis upon which we may vacate an arbitration award. Universal Computer Sys., 183 S.W.3d at 752; Chambers,
2006 WL 2974318, at *5. FCA has not established that Andrews acted in bad faith
or failed to exercise honest judgment. See
Universal Computer Sys.,
183 S.W.3d at 753. 

We overrule FCA’s second issue.

Conclusion

          We affirm the trial court’s judgment.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

 











[1]
          FCA also cites to Babcock & Wilson Co. v. PMAC, Ltd.,
863 S.W.2d 225, 233–34 (Tex. App.—Houston [14th Dist.] 1993), but that case
interprets federal law rather than section 171.088 of the CPRC.





[2]
          Neither party argues that gross
mistake is not a valid grounds for vacating the
arbitration award.