ANCOR HOLDINGS, LLC, Appellant/Cross–Appellee

v.

PETERSON, GOLDMAN & VILLANI, INC., Appellee/Cross–Appellant.

No. 05–08–00739–CV.

Court of Appeals of Texas, Dallas.

Aug. 25, 2009.

Jason C. Nash, Donald E. Herrmann, Kelly Hart & Hallman LLP, Fort Worth, TX, for Appellant.

Robert Carl Jones, Roger D. Kirstein, Robinson C. Ramsey, Langley & Banack, Inc., San Antonio, TX, for Appellee.

Before Justices MOSELEY, O'NEILL, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Ancor Holdings, LLC appeals the trial court's judgment confirming an arbitration award under the Federal Arbitration Act (FAA) in favor of appellee, Peterson, Goldman & Villani, Inc. (PGV). In five issues, Ancor argues the arbitration award should be vacated because the arbitrator manifestly disregarded the law, exceeded her powers, and reached an award full of gross error, showing a failure to exercise honest judgment. PGV also filed a cross-appeal asserting the trial court erred when it (1) modified the arbitration award to exclude PGV's award for its share of the arbitration costs and (2) denied PGV's request to modify the name of appellant. We conclude the trial court erred by excluding PGV's award for one-half the arbitration costs and therefore modify the judgment of the trial court to reinstate PGV's award. We affirm the trial court's judgment as modified.

## BACKGROUND

This dispute arises from PGV's action to enforce a guaranty agreement against Ancor. PGV was the successor-in-interest to a Continuing and Unconditional Guaranty (Guaranty) by Ancor and in favor of Bank of America, N.A. (Bank). The Guaranty related to $2,200,000 in promissory notes payable to the Bank by OpenPoint Systems, Inc., the successor-by-merger to three entities in which Ancor was the controlling shareholder. PGV purchased the

promissory notes and Guaranty from the Bank in March 2003.

The Guaranty provided that it was "continuing and unlimited as to the amount," except as set forth in this limitation:

> As of the date of any default under this Guaranty or under any Loan Documents ... between [OpenPoint] and the [Bank], to the extent the Bank resorts to [Ancor] for payment, this Guaranty is limited to an amount equal to the difference between (a) $1,643,000.00 and (b) the sum of (i) [OpenPoint's] reported total of accounts receivable as reported by [OpenPoint] to the Bank as of the date of such default (ii) the total value of [OpenPoint's] inventory as reported by [OpenPoint] to the Bank as of the date of such default and (iii) the total value of [OpenPoint's] net fixed assets as reported by [OpenPoint] to the Bank as of the date of such default; *provided* that Bank has a perfected, first priority lien, that is not subject to any claims of preference in any bankruptcy or insolvency proceeding, in such accounts receivable, inventory and fixed assets as of the date of such default.

(Emphasis in original). According to Ancor, the essential purpose of the Guaranty was to protect the Bank against further deterioration in the value of the Bank's collateral position. At the time the parties signed the Guaranty, the Bank's collateral had a reported value of $1,643,000. Therefore, Ancor believed it would be liable only for the difference between $1,643,000 and the reported value of the collateral at the time of a default.

The parties signed the Guaranty on March 7, 2000. One month later, the Bank recorded new UCC–1 financing statements on certain OpenPoint collateral to perfect its first priority lien status.[1] At the time the parties negotiated the Guaranty, Ancor's representatives assumed the Bank held a perfected security interest in the OpenPoint collateral. On May 16, 2000, two months after Ancor and the Bank executed the Guaranty and just over a month after the Bank filed new financing statements, OpenPoint filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code, an event of default under the Guaranty.

During the bankruptcy proceedings, the bankruptcy trustee questioned the Bank's first priority lien status on the OpenPoint collateral. Two years later, in May 2002, the bankruptcy trustee filed an adversary proceeding against the Bank, alleging that the financing statements filed in the month preceding the bankruptcy filing should be avoided as a preference. The Bank alleged various defenses in its answer to the preference claim, and the bankruptcy trustee settled with PGV in April 2003 for $120,000. The bankruptcy court approved the settlement and ordered that PGV's remaining claim in excess of the settlement amount be subordinated to the claims of the general unsecured creditors for any future distributions from the bankruptcy estate. PGV received no further distributions from the bankruptcy estate.

On February 2, 2004, PGV filed suit seeking to enforce the Guaranty against Ancor. PGV asserted that because the bankruptcy trustee filed a preference claim, Ancor could not invoke the limitations formula provided in the Guaranty and was therefore liable for the full

---

1. The Bank had previously recorded UCC–1 financing statements for this collateral. Those documents, however, were in the name of OpenPoint's predecessors, Farris Point of Sale, Inc., ABS, Inc., and Hospitality POS, Inc. The three entities merged in February 1999 and changed their name to OpenPoint. At the time the parties negotiated the Guaranty, the Bank had not filed new financing statements under the OpenPoint name.

amount owed under the promissory notes. The trial court thereafter referred the case to arbitration pursuant to the parties' joint motion under the Guaranty's arbitration clause.

During the course of the arbitration proceedings, the arbitrator issued six interim orders and findings. The first Interim Order and Findings addressed the extent of Ancor's liability under the Guaranty. Applying the rules of contract construction, the arbitrator determined the pertinent language of the Guaranty was unambiguous, as urged by both parties. The arbitrator concluded the filing of a preference claim in the OpenPoint bankruptcy proceedings was enough to negate the limitation provision in the Guaranty, rendering Ancor liable for the full amount due under the promissory notes.

After Ancor asked for reconsideration of the first order, the arbitrator issued a Second Interim Order and Findings. In her second order, the arbitrator acknowledged Ancor's arguments regarding the language and meaning of the Guaranty, specifically noting that "[c]ontrary to its initial stipulation in these proceedings that the pertinent Guaranty language is unambiguous, Ancor now contends that the language is ambiguous...." After considering Ancor's claim of ambiguity, the arbitrator determined that "[w]hen the language of the Guaranty is read as a whole in light of the circumstances present when the Guaranty was entered, and in accordance with governing contract interpretation rules, one reasonable meaning emerges." Based on the phrase "subject to any claims of preference ... as of the date of such default," the arbitrator concluded the Guaranty reflected the parties' intention that the limitation language be vitiated such that "the Bank recover its right to a full Guaranty, where its lien is subject to *any* claim of preference...." (Emphasis in original). The arbitrator upheld her first decision.

Following the second order, PGV filed an amended petition and moved for summary judgment on the amount owed by Ancor. In response, Ancor filed an amended answer and a counterclaim for reformation of the Guaranty. On its reformation claim, Ancor asserted mutual mistake. It requested reformation to reflect the Bank's and Ancor's mutual intent for a "limited" guaranty. Acknowledging that Ancor's newly asserted affirmative defenses and counterclaim for reformation altered the nature of the proceedings and required additional discovery, the arbitrator allowed Ancor to proceed on the new defenses and counterclaim. After extensive briefing, the arbitrator concluded Ancor's reformation claim was not time-barred.[2]

Following an evidentiary hearing on the reformation issue, the arbitrator issued the Sixth Interim Order and Findings partially granting Ancor's request. She concluded Ancor's liability was capped under the formula paragraph at the maximum of $1,643,000. The arbitrator reformed the Guaranty "consistent with the intent of the parties," using language proposed by Ancor, as follows:

> This Guaranty is continuing and unlimited as to the amount, except as set forth below....

---

2. The arbitrator's Third, Fourth, and Fifth Interim Orders and Findings addressed the statute of limitations issue. In her third order, she concluded Ancor's reformation counterclaim was not barred by the statute of limitations. PGV moved for reconsideration of the limitations issue, and in response, the arbitrator issued the fourth order, upholding the decision that the reformation counterclaim was not time-barred. PGV then moved for reconsideration or clarification of the fourth order. The arbitrator issued the fifth order addressing the issue for the third time.

As of the date of any default under this Guaranty or any Loan Documents ... between [OpenPoint] and the Bank, to the extent the Bank resorts to [Ancor] for payment, this Guaranty is limited to an amount equal to the difference between (a) $1,643,000.00 and (b) the sum of [i] [OpenPoint's] reported total of accounts receivable as reported by [OpenPoint] to the Bank as of the date of such default (ii) the total value of [OpenPoint's] inventory as reported by [OpenPoint] to the Bank as of the date of such default and (iii) the value of [OpenPoint's] net fixed assets as reported by [OpenPoint] to the Bank as of the date of such default; **provided that the guaranty amount of $1,643,000 will only be reduced by the value of those items of collateral (accounts receivable, inventory and/or net fixed assets) in which the Bank holds a perfected first priority lien as of the date of any default, and which has not been made the subject of a claim of preference in any bankruptcy or insolvency proceeding.**

(Emphasis in original). The arbitrator found by clear and convincing evidence that "a slight change" was warranted to conform the agreement to the actual terms reached among the representatives of Ancor and the Bank. She upheld the reformation in her "Clarification of Sixth Interim Order and Findings."

Thereafter, the arbitrator entered the Final Award, providing a detailed analysis of her findings and rationale. Importantly, she discussed the "perfected, first priority lien" language and concluded from the evidence that the first priority lien requirement was an "agreed term." She further emphasized that all parties were sophisticated businessmen and understood the value of the collateral was meaningless unless the Bank had the ability to collect. Applying the $1,643,000 damage cap for-

mula, the arbitrator calculated and awarded PGV $829,764 in principal under the Guaranty plus interest, costs, and attorneys' fees. Without specifying an amount, the arbitrator also awarded PGV its share of the arbitration costs.

The parties' cross-motions to confirm and vacate the arbitration award followed. After hearing arguments, the trial court signed a judgment confirming the award in favor of PGV, but excluding PGV's arbitration costs because PGV presented no evidence of its costs. Thereafter, the trial court modified the judgment to fix a typographical error as to the commencement date for prejudgment interest. The trial court also denied PGV's requests to reinstate the arbitrator's award of costs and to modify the name of appellant from Ancor Holdings, LLC to Ancor Holdings, LP. Both parties appealed.

## ANALYSIS

Ancor raises five issues on appeal asserting the trial court erred by not vacating the arbitration award. Ancor's issues essentially attack the award in three respects: (1) the arbitrator manifestly disregarded the law (issues one and five); (2) the arbitrator exceeded her powers by allowing PGV to arbitrate its issues that were barred and by rendering a decision that violates the essence of the Guaranty (issues two and three); and (3) the arbitration award is tainted with gross mistake, implying a failure to exercise honest judgment (issue four). In its cross-appeal, PGV contends the trial court erred when it excluded the arbitrator's award of costs and denied PGV's request to modify Ancor's name. We begin with Ancor's issues.

### Standard of Review

■ The parties agree the FAA applies to this case. *See* 9 U.S.C. §§ 1–16

(2009). We review de novo a trial court's confirmation of an arbitration award under the FAA based on the entire record. *Myer v. Americo Life, Inc.,* 232 S.W.3d 401, 407 (Tex.App.-Dallas 2007, no pet.); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 250 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). An arbitration award is treated the same as the judgment of a court of last resort. *Bailey & Williams v. Westfall,* 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.); *see also Quinn v. Nafta Traders, Inc.,* 257 S.W.3d 795, 798 (Tex. App.-Dallas 2008, pet. granted). All reasonable presumptions are indulged to uphold the arbitrator's decision, and none is indulged against it. *Bailey,* 727 S.W.2d at 90; *see also CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex.2002).

■ An arbitration award is presumed valid and entitled to great deference. *Myer,* 232 S.W.3d at 407–08; *Crossmark, Inc. v. Hazar,* 124 S.W.3d 422, 429 (Tex.App.-Dallas 2004, pet. denied). When reviewing an arbitration award, we may not substitute our judgment merely because we would have reached a different decision. *Bailey,* 727 S.W.2d at 90; *see also CVN Group, Inc.,* 95 S.W.3d at 238. Judicial review of an arbitration award adds expense and delay and thereby diminishes the benefits of arbitration as an efficient, economical system for resolving disputes. *CVN Group, Inc.,* 95 S.W.3d at 238; *Crossmark,* 124 S.W.3d at 429. Accordingly, our review of the arbitration award is "extraordinarily narrow." *Myer,* 232 S.W.3d at 408; *see also Statewide Remodeling, Inc. v. Williams,* 244 S.W.3d 564, 568 (Tex.App.-Dallas 2008, no pet.); *Tanox,* 105 S.W.3d at 250. Importantly, our review is so limited that we may not

vacate an award even if it is based upon a mistake in law or fact. *Crossmark,* 124 S.W.3d at 429 (citing *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 266 (Tex. App.-Houston [14th Dist.] 1995, no writ)). Because of the deference given to arbitration awards, judicial scrutiny focuses on the integrity of the process, not the propriety of the result. *TUCO Inc. v. Burlington N. R.R. Co.,* 912 S.W.2d 311, 315 (Tex. App.-Amarillo 1995), *modified on other grounds,* 960 S.W.2d 629 (Tex.1997).

### Vacatur under the FAA

■ Under the terms of the FAA, an arbitration award must be confirmed unless it is vacated, modified, or corrected under one of the limited grounds set forth in sections 10 and 11 of the Act. *See* 9 U.S.C. §§ 9–11. Section 10(a) permits a court to vacate an arbitration award—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a). Although the courts have recognized certain common law exceptions for vacating an arbitration award,[3] the United

---

**3.** "The common law grounds to set aside an arbitration award include fraud, misconduct, or gross mistake that implies bad faith and

failure to exercise honest judgment." *Crossmark,* 124 S.W.3d at 430 n. 6; *accord Graham–Rutledge & Co. v. Nadia Corp.,* 281

States Supreme Court recently held that the grounds listed in the statute are the exclusive grounds for vacating an arbitration award under the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1403, 170 L.Ed.2d 254 (2008) (holding that statutory grounds for vacating or for modifying or correcting arbitration award are exclusive grounds for expedited vacatur and modification of award pursuant to FAA); *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir.2009) (concluding *Hall Street* restricts grounds for vacatur to those set forth in section 10).

Of the issues Ancor presents for review, only two—that the arbitrator exceeded her powers by ignoring the law and by rendering an award that violates the essence of the Guaranty—arguably fall within the statutory grounds for vacatur under the FAA. *See* 9 U.S.C. § 10(a)(4). Ancor's remaining grounds—that the arbitrator manifestly disregarded the law and committed gross mistake implying a failure to exercise honest judgment—are common law grounds for vacating an arbitration award. *See Crossmark*, 124 S.W.3d at 430 n. 6; *Tanox*, 105 S.W.3d at 252. The parties dispute whether the Supreme Court's decision in *Hall Street* forecloses our review based on Ancor's non-statutory grounds. We conclude it does.

In *Hall Street*, the parties to the underlying lease dispute agreed to submit an indemnification claim to arbitration. *Hall St.*, 128 S.Ct. at 1400. The arbitration agreement, which was negotiated by the parties and approved by the district court, required the court to "vacate, modify or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." *Id.* at 1400–01. These contractually agreed grounds deviated from those prescribed in the FAA, and the Supreme Court granted review to determine "whether the grounds for vacatur and modification provided by §§ 10 and 11 of the FAA are exclusive." *Id.* at 1401.

Reviewing the purpose and text of the FAA, the Supreme Court held that sections 10 and 11 "provide the FAA's exclusive grounds for expedited vacatur and modification." *Id.* at 1403. In so holding, the Supreme Court expressly rejected the argument that its use of the phrase "manifest disregard of the law" in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), expanded the grounds for vacatur beyond those listed in section 10. *Hall St.*, 128 S.Ct. at 1403. The Supreme Court instructed that the text of the FAA "compels a reading of the §§ 10 and 11 categories as exclusive" because even assuming these sections could be supplemented, "it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally." *Id.* at 1404. The Supreme Court further explained:

> [I]t makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to main-

---

S.W.3d 683, 688 (Tex.App.-Dallas 2009, no pet.); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex.App.-San Antonio 2003, pet. denied); *see also Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 353 (5th Cir.2004) ("Besides the four statutory grounds, manifest disregard of the law and contrary to public policy are the only nonstatutory bases recognized by this circuit for va-

catur of an arbitration award."), *impliedly overruled by Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349 (5th Cir.2009); *Tanox*, 105 S.W.3d at 252 (" 'Manifest disregard of the law' is a judicially created ground for vacating arbitration awards.") (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)).

tain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can "rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process," and bring arbitration theory to grief in post-arbitration process.

*Id.* at 1405 (quoting *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir.2003)) (internal citations omitted). The Supreme Court also noted that expanding sections 10 and 11 is inconsistent with the language of section 9, which directs a court to grant an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." *Id.* (quoting 9 U.S.C. § 9). The Supreme Court emphasized that this language "carries no hint of flexibility." *Id.*

■ Following *Hall Street*, the Fifth Circuit, in *Citigroup Global Markets, Inc. v. Bacon,* overruled its precedent holding that non-statutory grounds may support vacatur of an arbitration award under the FAA. 562 F.3d at 358. Ancor urges us to disregard *Citigroup* and argues the Supreme Court "has not expressly ruled that 'manifest disregard' is no longer a valid ground for vacating an arbitrator's award." We disagree. We find the analysis and holding in *Citigroup* persuasive and conclude the Supreme Court made clear that sections 10 and 11 are the exclusive grounds for vacating and modifying an arbitration award under the FAA. *See Hall St.*, 128 S.Ct. at 1403. Thus, our review of an arbitration award under the FAA is limited to the statutory grounds.[4]

**4.** Indeed, this Court has previously stated that under the FAA, attacks on arbitration awards are limited to the grounds set forth in sections 10 and 11. *See, e.g., Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 805–06 (Tex. App.-Dallas 2008, pet. denied) (" 'Under the FAA, the validity of an arbitration award is subject to attack only on grounds listed in sections 10 and 11 of the Act.' ") (quoting *Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 319–20 (Tex.App.-Dallas 1999, no pet.)); *Antenna Prods. Corp. v. Cosenza*, No. 05–05–00701–CV, 2006 WL 1452102, at *2 (Tex.App.-Dallas May 26, 2006, no pet.) (mem. op.) (rejecting appellant's non-statutory grounds for vacating arbitration award because these grounds not listed in section 10 of FAA). In the wake of *Hall Street*, several Texas courts agree. *See, e.g., Allstyle Coil Co., L.P. v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.-Houston [1st Dist.] 2009, no pet.) (holding that non-statutory grounds for vacatur are "no longer legally recognized grounds for vacating an arbitration award"); *Cameron Int'l Corp. v. Vetco Gray Inc.*, No. 14–07–00656–CV, 2009 WL 838177, at *8 (Tex.App.-Houston [14th Dist.] Mar. 31, 2009, no pet. h.) (mem. op.) (following suggestion of *Hall Street* and declining to accept appellant's request for legal and factual sufficiency review of arbitration award); *Chandler v. Ford Motor Credit Co., LLC*, No. 04–08–00100–CV, 2009 WL 538401, at *3 (Tex.App.-San Antonio Mar. 4, 2009, no pet. h.) (mem. op.) (adopting *Hall Street* and holding that appellants failed to demonstrate statutory basis for vacating arbitration award); *see also Saipem Am. v. Wellington Underwriting Agencies Ltd.*, —— Fed.Appx. ——, —— (5th Cir.2009) (per curiam) (holding that court may vacate arbitration award only if statutory ground supports vacatur); *Nat'l Resort Mgmt. Corp. v. Cortez*, 319 Fed.Appx. 313, 313 (5th Cir.2009) (per curiam) ("The number of grounds for challenging an arbitration award has been substantially reduced in light of [*Hall Street* ] and [*Citigroup* ]."); *Ascension Orthopedics, Inc. v. Curasan, A.G.*, Civil Action No. H–07–4033, 2008 WL 2074058, at *2 (S.D.Tex. May 14, 2008) (mem.) (stating Supreme Court's *Hall Street* decision "is unequivocal that the grounds upon which vacatur may be based as listed in § 10 are exclusive"); *In re Poly-America, L.P.*, 262 S.W.3d 337, 362 (Tex. 2008) (Brister, J., dissenting) ("Both federal and state law require courts to enforce an arbitrator's decision, no matter what it is, with very few exceptions. The allowable exceptions concern extrinsic or procedural matters like corruption, fraud, or refusing to hear evidence; they do not include (as the Su-

■ We note that, in *Hall Street*, the Supreme Court suggested the possibility that a "more searching review based on authority outside the statute" could serve as bases for vacating or modifying arbitration awards. *Hall St.*, 128 S.Ct. at 1406.[5] This case, however, does not open the door to that possibility. Here, the parties pursued arbitration according to the terms of the Guaranty, which expressly invoked the FAA. The only arguments made in the trial court and on appeal address the FAA. Accordingly, we do not consider the viability of non-statutory grounds here and express no opinion that non-statutory grounds for vacating or modifying an arbitration award could be considered in other contexts.

Because manifest disregard of the law and gross mistake are not grounds for vacating an arbitration award under the FAA, Ancor has not demonstrated trial court error as to those grounds. We overrule Ancor's first, fourth, and fifth issues.

## Section 10(a)(4)

Ancor's second and third issues fall within section 10(a)(4) of the FAA, which states that an arbitration award may be vacated "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Ancor's argument for vacatur under section 10(a)(4) has two parts. First, Ancor complains the arbitrator exceeded her powers by allowing PGV to arbitrate issues that were precluded by res judicata or collateral estoppel. Second, Ancor contends the arbitrator exceeded her powers by reaching a decision that does not draw its es-

sence from the intended purpose of the Guaranty.

### *Arbitrator Authority*

■ "An arbitrator's authority is limited to disposition of matters expressly covered by the agreement or implied by necessity." *Quinn*, 257 S.W.3d at 799. Arbitrators, therefore, exceed their powers when they decide matters not properly before them. *Id.; see also Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959). For example, an arbitrator exceeds her powers by allocating an award of costs between the parties when the arbitration agreement specifically requires the arbitrator to designate a non-prevailing party to bear the costs of both sides. *See Townes Telecomms., Inc. v. Travis, Wolff & Co., L.L.P.*, No. 05–08–00079–CV, 2009 WL 1844330, at *3 (Tex.App.-Dallas June 29, 2009, pet. filed).

■ Our inquiry under section 10(a)(4) is whether the arbitrator had the authority, based on the arbitration clause and the parties' submissions, to reach a certain issue, not whether the arbitrator correctly decided the issue. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir.1994); *see also DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir.1997). The award must be derived in some way from the wording and purpose of the agreement, and we look to the result reached to determine whether the award is rationally inferable from the contract. *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215,

preme Court just held) disregarding the law, even if a legal error is 'manifest.' "); *Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 583, 594 (Tex.App.-Texarkana 2009, pet. filed) (stating this Court has based past application of manifest disregard standard on Fifth Circuit precedent and opining, though not deciding, that this Court would follow *Citigroup* ).

**5.** Specifically, the Supreme Court stated: "The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." *Id.*

1219 n. 3 (5th Cir.1990). We may not vacate an arbitration award for errors in interpretation or application of the law or facts. *Crossmark,* 124 S.W.3d at 429.

■■■■ Although Ancor's first argument is couched in terms of whether the arbitrator exceeded her powers, Ancor's argument is actually a complaint that the arbitrator committed an error of law by rejecting Ancor's assertion that PGV's claims were barred by res judicata or collateral estoppel. A complaint that the arbitrator decided the issue incorrectly or made mistakes of law, however, is not a complaint that the arbitrator exceeded her powers. *See Pheng Invs., Inc. v. Rodriquez,* 196 S.W.3d 322, 329 (Tex.App.-Fort Worth 2006, no pet.) (op. on reh'g). Moreover, after examining the Guaranty, the parties' submissions, the arbitrator's interim orders, and the final award, there is no doubt the arbitrator responded to the issues submitted by the parties and that the arbitration award falls within the scope of the Guaranty. Paragraph 17 of the Guaranty requires "ANY CONTROVERSY OR CLAIM" arising out of the Guaranty to be determined by binding arbitration. Because Ancor has not established that the arbitrator decided a matter not properly before her, we cannot conclude the arbitrator exceeded her powers under section 10(a)(4) of the FAA. *See* 9 U.S.C. § 10(a)(4); *see also Quinn,* 257 S.W.3d at 799. We overrule Ancor's second issue.

### Essence of the Contract

The other strand of Ancor's argument under section 10(a)(4) is that the arbitration award does not "draw its essence" from the intended purpose of the Guaranty. Ancor contends the arbitrator exceeded her powers by rendering a decision that violates the Guaranty's purpose.

■■■■ An arbitrator's award is "legitimate only so long as it draws its essence" from the underlying contract. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The "essence" test was developed as part of section 10(a)(4), allowing vacatur where the arbitrator exceeds her contractual authority. *See id.; Executone,* 26 F.3d at 1324–25; *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 602, 604 (5th Cir.1989) (vacating the arbitrator's award because the arbitrator exceeded the express provisions of his contractual mandate).

■■■■ To draw its essence from the Guaranty, the arbitrator's award "'must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the [Guaranty].'" *Executone,* 26 F.3d at 1325 (quoting *Bhd. of R.R. Trainmen v. Cent. of Ga. Ry. Co.,* 415 F.2d 403, 412 (5th Cir.1969)). "'[T]he award must, in some logical way, be derived from the wording or purpose of the contract.'" *Id.* The arbitrator may not ignore the plain language of the Guaranty in her interpretation. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Because the parties also authorize the arbitrator to give meaning to the language of the agreement, we should not reject an award on the ground that an arbitrator misread the contract. *Id.* at 37–38, 108 S.Ct. 364. Thus, "improvident, even silly" interpretations by arbitrators usually survive judicial challenges. *Id.* at 39, 108 S.Ct. 364; *accord Perry Homes v. Cull,* 258 S.W.3d 580, 607 (Tex.2008) ("If arbitrators simply misinterpret a contractual clause ... that type of error is not one which will justify setting aside an award.").

■■■■ Our inquiry here is not one of contract interpretation. Rather, we look

to whether the arbitrator's award "was so unfounded in reason and fact, so unconnected with the wording and purpose of the [Guaranty] as to 'manifest an infidelity to the obligation of the arbitrator'" such that the arbitrator failed to interpret the Guaranty at all. *Bhd. of R.R. Trainmen,* 415 F.2d at 415 (quoting *Enter. Wheel,* 363 U.S. at 597, 80 S.Ct. 1358); *see also Misco, Inc.,* 484 U.S. at 38, 108 S.Ct. 364 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *Wise v. Wachovia Secs., LLC,* 450 F.3d 265, 269 (7th Cir.2006); *Perry Homes,* 258 S.W.3d at 607. Even if we disagree with the arbitrator's decision here, we must uphold confirmation of the award if the arbitrator's decision is rationally inferable from the Guaranty. *Misco, Inc.,* 484 U.S. at 38, 108 S.Ct. 364; *Anderman/Smith,* 918 F.2d at 1219 n. 3.

■ Ancor's position is that the arbitrator's resulting decision, which was based on her interpretation and eventual reformation of the Guaranty, "was never the parties' deal." Ancor argues that the only deal it struck with the Bank was to protect the Bank against further deterioration in the value of the Bank's collateral position. Ancor maintains that the intent behind the agreement was for Ancor to assume "limited" liability, as detailed in the formulaic limitation found in the Guaranty. Ancor complains that the Guaranty's intent was not, as the arbitrator found, for Ancor to be exposed to full liability in the event the Bank held an unperfected lien on its collateral.

It is clear from the arbitrator's interim orders and final award that she went through the process of interpreting the Guaranty and that she considered the wealth of evidence presented to her. Our question now is to determine whether the arbitrator's liability finding and ultimate award of damages is rationally inferable from the Guaranty. We conclude it is.

In the first and second interim orders, the arbitrator assessed the limitation paragraph in the Guaranty. She concluded that this paragraph had one reasonable meaning:

First, the Bank would have a continuing and unlimited Guaranty from Ancor for all amounts due under the loan agreement between the Bank and [OpenPoint]. Second, in the event of any default, Ancor's liability would be limited according to the formula described in the Guaranty; however, Ancor's liability would only be limited if the Bank had a 'perfected first priority lien, that [was] not subject to *any* claims of preference in any bankruptcy or insolvency proceeding ... as of the date of such default.'

(Emphasis in original). Applying that limitation, she concluded the language at issue reflects the intention that "the Bank recover its right to a full Guaranty, where its lien is subject to *any* claim of preference...." (Emphasis in original). Thus, the arbitrator opined that under the plain meaning of the Guaranty, "the limiting language was to be vitiated under any circumstance where the Bank was subject to a claim of preference as of the date of default, whether that claim had already been filed in court, or whether the facts which give rise to the claim merely exist, but have not yet been reduced to writing." The arbitrator rejected Ancor's argument—that the Guaranty's limitation paragraph cannot be negated just because a preference claim was filed—stating that Ancor's argument and interpretation of the Guaranty would effectively reform the agreement. At that time, no party had sought reformation.

The arbitrator reconsidered the interpretation of the Guaranty in the sixth interim order and the later clarification and reformed the Guaranty to provide a cap on Ancor's liability. Based on the evidence and argument presented on the issue of reformation, the arbitrator found that the evidence tended to show two things: (1) Ancor was only willing to ensure no further deterioration of the Bank's collateral position as it existed at the time the Guaranty was signed, meaning the Bank and Ancor intended that Ancor's obligations under the Guaranty would be capped at $1,643,000, and that cap would be reduced by the value of accounts receivable, inventory, and net fixed assets as reported by OpenPoint to the Bank as of the date of any default; and (2) the Bank and Ancor agreed that the Bank was to have a perfected first priority lien in any collateral included in any calculation to reduce the $1,643,000 cap. "Thus, reported collateral values may be deducted, except where the Trustee filed a claim of preference against said collateral." Significant to this decision was the fact that Ancor's representative testified they agreed the Bank should be able to collect on the collateral in the event of any default.

The arbitrator also considered the inclusion of the "perfected, first priority lien status" in the reformed Guaranty. She concluded the addition of this phrase was warranted and reasoned that "[w]ithout a perfected first priority lien on collateral, the Bank would not have the legal right to seize and sell the collateral in the event of a bankruptcy." Further, despite Ancor's contention that it was only willing to "insure the bank no further deterioration in [the Bank's] collateral position," the arbitrator looked to what "collateral position" meant in terms of the Guaranty and stated that "[c]ollateral position … includes not only the valuation of the collateral, but also the priority lien status to be able to collect on the collateral." Because the Bank should be able to collect on the collateral, the arbitrator concluded that the "perfected, first priority lien" provision was an "enforceable term within the reformed Guaranty." Looking to the evidence related to the reported values of OpenPoint's accounts receivable, inventory, and net fixed assets, the arbitrator applied the limitation formula in the reformed Guaranty and, after deducting the collateral that was challenged by the trustee, the arbitrator awarded PGV $829,764 under the Guaranty.

By including an arbitration clause in the Guaranty, the parties agreed to submit any disputes arising out of the Guaranty to an arbitrator rather than a judge. *Misco, Inc.,* 484 U.S. at 37–38, 108 S.Ct. 364. They also agreed to accept "whatever reasonable uncertainties" might arise from the process. *Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 235 (Tex. App.-Houston [14th Dist.] 1993, writ denied). Thus, it is the arbitrator's "view of the facts and of the meaning of the contract that they have agreed to accept." *Misco, Inc.,* 484 U.S. at 37–38, 108 S.Ct. 364. Here, the arbitrator determined that under the reformed Guaranty, Ancor is liable to PGV for an amount equal to the difference between the $1,643,000 cap and the reported value of the collateral at the time of the default in which the Bank held a perfected first priority lien as of the date of the default and which has not been challenged by the trustee.

We conclude the arbitrator could rationally determine that the presence of the "perfected, first lien priority" language meant that Ancor could be liable for an amount up to the agreed cap where the lien is subject to any claim of preference in a bankruptcy or insolvency proceeding as of the date of default. It appears to this Court that the arbitrator properly per-

formed her obligation to interpret and reform the Guaranty. The mere fact that the arbitrator did not adopt the interpretation of the Guaranty urged by Ancor and rejected certain proposals in reforming the Guaranty does not equate to overstepping or exceeding her authority. Even if the arbitrator made a mistake in the application of the law, as urged by Ancor, such a mistake is not a ground for vacating an arbitration award. We therefore conclude the arbitrator's decision and award of damages are rationally inferable from the Guaranty. We overrule Ancor's third issue.

### PGV's Cross–Appeal

#### Arbitration Costs

PGV asserts two issues in its cross-appeal. In its first issue, PGV complains the trial court erred when it omitted PGV's share of the arbitration costs as awarded. The arbitrator's award provides that "[u]nder the terms of the Guaranty, Ancor is liable to pay PGV's share of the arbitration costs." The arbitrator did not award a specific amount of costs, but she undeniably based her decision on paragraph 14 of the Guaranty. Without a request to do so by either party, the trial court modified PGV's award, stating that "[a]lthough the Arbitrator's Final Award awarded PGV its share of the total costs of the arbitration proceeding, PGV presented no evidence of these costs, and this relief is therefore denied." The trial court also denied PGV's subsequent motion, seeking reinstatement of the award.

■■■ PGV argues the trial court's modification of the award was improper because it did not confirm the award as written. We agree. The Guaranty authorizes the arbitrator to determine "ANY CONTROVERSY OR CLAIM" and provides that the arbitration shall be "BINDING." The record shows that the arbitra-

tor considered the issue of arbitration costs as evidenced by the final award and that she applied the specific Guaranty provision in awarding those costs. The record further shows that neither party filed a motion to modify the arbitration award to exclude PGV's award for arbitration costs from the final judgment as required by section 11 of the FAA. See 9 U.S.C. § 11 (allowing the trial court to modify or correct an arbitration award on limited grounds "upon the application of any party"). Ancor's post-arbitration motion only asked the trial court to vacate the entire award under section 10(a) of the FAA and on other common law grounds.

■■■ When parties submit a matter to arbitration, a trial court is generally without authority to modify the arbitrator's award. *Kosty v. S. Shore Harbour Cmty. Assoc., Inc.*, 226 S.W.3d 459, 465 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) (holding trial court erred by adding attorney's fees to award); *Int'l Bank of Commerce–Brownsville v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 54–55 (Tex.App.-Corpus Christi 1998, pet. denied) (holding trial court erred by adjusting post-judgment interest rate and by awarding additional attorney's fees); *Monday v. Cox*, 881 S.W.2d 381, 384 (Tex.App.-San Antonio 1994, writ denied) (holding trial court erred in setting aside arbitrator's award for attorney's fees). The FAA requires the trial court to confirm the arbitration award unless grounds are offered to vacate, modify, or correct the award. 9 U.S.C. §§ 9, 11. Here, no grounds were offered to omit PGV's share of the arbitration costs. That the award did not include a specific amount of the arbitration costs does not preclude confirmation of the arbitrator's decision. *Cf.* Tex. Civ. Prac. & Rem.Code Ann. § 31.007(a) (Vernon 2008) ("[I]t shall not be necessary for any of the parties to present a record of court costs

to the court in connection with the entry of a judgment.").

We conclude the trial court had no authority to exclude PGV's award for arbitration costs from the final judgment. The trial court therefore abused its discretion in denying PGV's motion to modify the final judgment to reinstate the costs expressly awarded by the arbitrator. We modify the trial court's judgment to conform with the arbitrator's award to PGV for its share of the total arbitration costs. We sustain PGV's first cross-issue.

### Modification of Appellant's Name

██ In its second issue, PGV complains that the trial court erred when it denied PGV's request to modify the name of appellant. According to PGV, after the trial court signed the final judgment confirming the arbitration award, it discovered Ancor had merged with Ancor Holdings, LP. PGV believed Ancor Holdings, LP was the surviving entity of the merger and assumed Ancor's liabilities. PGV asked the trial court to modify its judgment to correctly list the defendant as "Ancor Holdings, LP," instead of "Ancor Holdings, LLC." PGV argues this is a simple case of misnomer—PGV sued the correct defendant, just under the wrong name. The trial court, however, denied PGV's request to substitute Ancor Holdings, LP as the judgment debtor in place of Ancor.

██ We conclude the trial court committed no error in denying PGV's request to modify appellant's name. We also refuse PGV's request to include Ancor Holdings, LP as a judgment debtor. We are presented with two separate, distinct legal entities: Ancor Holdings, LLC and Ancor Holdings, LP. Only Ancor Holdings, LLC was sued, was served with process, and appeared in this suit. A judgment "shall not be rendered against one who was neither named nor served as a party defendant." *Werner v. Colwell*, 909

S.W.2d 866, 869–70 (Tex.1995) (citing Tex.R. Civ. P. 124); *accord Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex.1991) (per curiam) (trial court erred by entering judgment against entity never made a party); *Fuqua v. Taylor*, 683 S.W.2d 735, 738 (Tex.App.-Dallas 1984, writ ref'd n.r.e) ("Judgment may not be granted in favor of a party not named in the suit as a plaintiff or a defendant."). Moreover, a party does not waive the service of process requirement by merely appearing as a witness in the case. *See Werner*, 909 S.W.2d at 870.

The Texas Rules of Civil Procedure require the judgment to "conform to the pleadings," and "entry of the judgment shall contain the full names of the parties, as stated in the pleadings, for and against whom the judgment is rendered." Tex.R. Civ. P. 301, 306. Our statutes of limitation and rules of practice afford plaintiffs ample time and many means of figuring out the proper identity of the parties sued. *Thomas v. Cactus Drilling Corp. of Tex.*, 405 S.W.2d 214, 216 (Tex.Civ.App.-Austin 1966, no writ). We may not disregard those rules to reach the requested result. Accordingly, we overrule PGV's second cross-issue.

### CONCLUSION

We conclude the statutory grounds are the exclusive grounds for vacating or modifying an arbitration award under the FAA. Because Ancor has failed to establish any statutory grounds for vacating the arbitration award, it must be confirmed. In addition, because the trial court erred in omitting PGV's award for its share of the arbitration costs from the judgment, we modify the trial court's judgment to conform with the arbitrator's award in that regard. We affirm the trial court's judgment as modified.