**Affirmed and Opinion Filed October 9, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00748-CV

### PARALLEL NETWORKS, LLC, Appellant
### V.
### JENNER & BLOCK LLP, Appellee

### On Appeal from the 101st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-13-01146-E

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

On August 27, 2015, we withdrew our opinion and vacated our judgment in this case.

The following is now the opinion of the Court.

Parallel Networks, LLC[1] appeals the trial court's judgment confirming an arbitration

award under the Federal Arbitration Act (FAA) in favor of Jenner & Block, LLP. In four issues,

Parallel argues the trial court erred in confirming an arbitration award that allowed recovery of

attorney's fees based upon a termination provision that was unconscionable and against public

policy; an award under the alternative theory of quantum meruit was also against public policy;

Jenner abandoned its client, Parallel, and thereby forfeited all compensation; and the trial court

---

[1] Parallel succeeded epicRealm Licensing LP in the contingent fee agreement in September 2007. All references herein are therefore to Parallel.

erred by confirming the arbitration award after the arbitrator refused to hear certain evidence. We affirm the trial court's judgment.

Jenner, a law firm, represented Parallel in patent infringement litigation against two defendants pursuant to a contingent fee agreement. Parallel and its managing partner and lead counsel, Terry Fokas, had negotiated numerous other contingent fee agreements with other firms in connection with Parallel's patent infringement program. In fact, the contingent fee agreement between Parallel and Jenner was based upon a prior contract with similar terms that Parallel had with another law firm. Parallel proposed the contract to Jenner as a basis for the contingent fee agreement which the parties later executed after minor revisions.

The agreement provided Parallel would be solely responsible for paying the up-front expenses associated with patent infringement lawsuits and that Parallel agreed to pay any third-party vendor's invoices promptly upon receipt of such invoices or to reimburse Jenner for expenses paid by Jenner on behalf of Parallel. In consideration for Jenner undertaking a patent infringement lawsuit, Jenner was to receive a percentage of net proceeds paid to Parallel according to a sliding percentage scale depending on the amount of the proceeds.

The agreement provided the parties would submit disputes to arbitration:

8. Arbitration of Disputes

(a)     Generally: The parties acknowledge that situations may arise which are not specifically addressed or contemplated in this Agreement. In that event, the Parties shall make a good faith effort to resolve any dispute relating in any manner to the Agreement or to any services provided pursuant to this Agreement in accordance with the general spirit of this Agreement. If the Parties cannot reach a satisfactory resolution, the Parties (or their authorized successors or assigns) agree that such dispute shall be finally adjudicated by arbitration conducted in Dallas, Texas under the auspices of JAMS®. The details concerning such arbitration, will be agreed upon by the Parties prior to the commencement of arbitration or, failing such agreement, by JAMS®. The arbitrator shall be selected by the mutual agreement of the Parties or, failing such agreement, from a panel of three arbitrators nominated by JAMS®, with each Party having the right to strike one of the arbitrators nominated by the other Party.

The agreement further provided Texas law would govern any dispute. The contingent fee agreement contained a provision addressing the termination of the agreement by either party:

9.    Termination.

a.    Termination by [Parallel]. This Agreement may be terminated by [Parallel] at any time by providing 30 days prior written notice to Jenner & Block. If [Parallel] elects to terminate this Agreement, [Parallel] shall: (i) compensate Jenner & Block for all time expended by Jenner & Block on any Enforcement Activity undertaken on behalf of [Parallel] at the regular hourly billing rates charged by Jenner & Block for its attorneys and legal assistants (in lieu of the Contingent Fee Award applicable to such Enforcement Activity); provided, however, that [Parallel] has not terminated this Agreement as a result of a material breach of this Agreement by Jenner & Block (and such breach was not cured within thirty (30) days of the receipt by Jenner & Block of written notice from [Parallel] of such material breach); (ii) reimburse Jenner & Block for all previously unreimbursed Enforcement Expenses incurred by Jenner & Block under this Agreement; and (iii) at the conclusion of any Enforcement Activity, pay Jenner & Block an appropriate and fair portion of the Contingent Fee Award based upon Jenner & Block [sic] contribution to the result achieved as of the time of termination of this Agreement (to the extent that Jenner& Block has not already been compensated under Section 9.a.(i) hereunder).

b.    Termination by Jenner & Block. If Jenner & Block determines at any time that it is not in its economic interest to continue the representation of [Parallel] pursuant to this Agreement, Jenner & Block may terminate this Agreement by providing 30 days prior written notice to [Parallel] provided that the timing of such a termination shall be in full accord with any applicable ethical or legal responsibilities (e.g. those promulgated by the American Bar Association (ABA) or those outlined by the Illinois Disciplinary Rules of Professional Conduct), which bind or otherwise control the behavior or actions of Jenner & Block. Subsequent to the termination, Jenner & Block shall use best efforts to secure substitute counsel for [Parallel]. If Jenner & Block terminates this Agreement, it shall continue to be entitled to receive compensation from [Parallel] pursuant to (i), (ii) and (iii) in the preceding paragraph up to the date of such termination LESS the reasonable costs incurred by [Parallel] to transition any pending or on-going Enforcement Activities that had been commenced with Jenner & Block to successor legal counsel.

Jenner continued representing Parallel in the two patent infringement lawsuits. However, by December 2008, Parallel owed Jenner approximately $500,000 in unpaid expenses associated with the lawsuits. Although Parallel paid the $500,000 out of a settlement in another patent infringement lawsuit, Jenner concluded it needed to terminate the representation. After logging

approximately 24,000 hours in the patent infringement cases, Jenner withdrew in February 2009 and transferred the cases along with the trial preparation materials to successor counsel.

In April 2009, Parallel settled one of the patent infringement lawsuits, and it settled the other lawsuit in April 2010, with the possibility of further settlement proceeds. In December 2011, Jenner filed a demand for arbitration before JAMS pursuant to the arbitration provision in the parties' agreement. The arbitration demand alleged Jenner provided more than $10 million worth of legal services to Parallel, yet Parallel refused to pay any amount for those services. Jenner alleged claims for breach of contract, quantum meruit, and promissory estoppel based on the contingent fee agreement. Jenner also sought to recover attorney's fees for its services in connection with the two lawsuits and the fees associated with the enforcement of the contingent fee agreement.

Parallel argued that the agreement was unenforceable, as interpreted by Jenner, because it violates public policy and is unconscionable. Parallel also argued Jenner abandoned Parallel without cause.

In October 2012, the arbitrator conducted hearings on the parties' claims. The arbitrator made written findings and an award. The arbitrator found Jenner had just cause to withdraw from representing Parallel. The arbitrator found that Parallel's history of failing to pay expenses timely and not having resources to pay expenses made the prospect of proceeding with the pending cases "less than attractive to Jenner."

The arbitrator next turned to a discussion of the theories under which Jenner could recover and the amount of such recovery. First, the arbitrator discussed paragraph 9.a.(i) incorporated by 9.b of the agreement, which provided Jenner was entitled, if the agreement was terminated, to receive compensation for all of its time incurred at its regular hourly billing rates in lieu of a contingent fee. The arbitrator stated this provision "raises questions about whether

–4–

the [9.a.(i)] clause creates an undue burden on the client and violates public policy because it arguably creates an incentive for the attorney to escape the contingent fee agreement and shifts to the client all of the risks of both contingent fee and hourly fee agreements." However, the arbitrator concluded it was "not necessary to reach any issues about [9.a.(i)]" because Jenner was "not seeking to enforce or to recover on Paragraph [9.a.(i)], and other provisions of the contract may be enforced without that provision."

The arbitrator cited paragraph 9.a.(iii), which provided for "an appropriate and fair portion of the Contingent Fee Award" to be paid to Jenner after Parallel received a payment or settlement at "the conclusion of an Enforcement Activity." Such a payment, the arbitrator continued, would be only after Parallel received a payment in a lawsuit and would not require immediate payment at the time the representation was terminated. The payment would also be limited in scope to an "appropriate and fair" portion of "the contingent fee award that Jenner otherwise might have recovered from an actual settlement or successful outcome, based on its contribution to that outcome, had Jenner continued its representation until the time that the settlements were achieved." He also found, "with Paragraph [9.a.(iii)], the attorney and client continue to share the risk of recovery, and the attorney's interest does not supersede the client's." In summing up the considerations underlying the application of paragraph 9.a.(iii) in this case, the arbitrator stated the following:

> Given the prodigious amount of time typically required and invested to prevail in complex patent infringement cases, like the underlying case here, it is reasonable for the very sophisticated parties in this case, both experienced in high stakes litigation, to agree in advance that if the representation is terminated after Jenner had invested huge amounts of time and services, that Jenner is entitled to receive some reasonable compensation such as that outlined in paragraph 9.b.(iii). It reflects their intent to be fair and reasonable, in the event of a recovery, to both parties in that situation: fair for Parallel not to pay the entire contingent fee but instead only a fair and appropriate portion of that, fair for Jenner to receive a fair and appropriate portion of a contingent fee based on its contribution to the result, and fair by avoiding the injustice of Parallel enjoying all the benefits of Jenner's

services and the fruits of the settlements, such as those here, without paying any fee whatsoever to Jenner.

Based on this reasoning, the arbitrator found that the termination fee set out in paragraph 9.a.(iii) did not "violate the overlay of ethical principles" and, because it did not violate public policy and was not unconscionable, the provision was enforceable.

Alternatively, the arbitrator determined that Jenner was also entitled to recover on a quantum meruit claim. The arbitrator stated Jenner provided significant legal services to Parallel; Fokas, Parallel's managing partner and lead counsel, reported being "very pleased" with Jenner's work; Fokas engaged three of Jenner's partners to represent Parallel after Jenner terminated its representation; successor counsel used and relied upon Jenner's work product to obtain settlements in the two patent infringement actions; and Jenner's work product was therefore a "meaningful factor in providing significant recoveries to Parallel." The arbitrator noted Parallel argued Jenner's quantum meruit claims were barred by the doctrine of "unclean hands" but rejected Parallel's argument because Jenner had just cause to terminate the representation.

As to damages, the arbitrator noted the measure of damages on the contract claim was an "appropriate and fair portion" of the contingent fee award, and the measure of damages on the quantum meruit claim was "the reasonable value of the services provided." The arbitrator stated the two measures of damages were similar, as were the considerations to be taken into account in determining damages under each measure. For Jenner's breach of contract claim, the arbitrator determined that $3,000,000 was an appropriate and fair portion of the contingent fee award based on Jenner's contribution to the result achieved with the patent infringement actions. Alternatively, on Jenner's quantum meruit claim, the arbitrator concluded $3,000,000 was the reasonable value of the services Jenner provided. Under either the breach of contract claim or

–6–

the quantum meruit claim, the arbitrator determined Jenner should recover sixteen percent of future settlement proceeds in the April 2010 settlement.

The arbitrator next addressed Parallel's counterclaims for breach of contract, breach of fiduciary duty, and legal malpractice. The arbitrator stated Parallel's breach of contract claim was premised upon Parallel's allegation that Jenner prematurely terminated its representation without just cause. The arbitrator concluded Jenner had just cause to terminate the representation and "did a very professional job" in effecting a smooth transition to successor counsel. The arbitrator also rejected Parallel's claim that Jenner breached the agreement by refusing to take on an additional patent infringement case. Because Jenner had just cause to terminate the representation it had already undertaken, the "entire obligation to represent Parallel" ceased. The arbitrator stated Parallel's breach of fiduciary duty claim was also based on Parallel's claim Jenner "breached its duties by abandoning Parallel without just cause" and by failing to disclose Jenner's plans to terminate the agreement. The arbitrator concluded none of Parallel's examples showed any injury to Parallel or improper benefit to Jenner, and there was nothing improper about Jenner "considering the economics of a contingent representation mid-case." Thus, the arbitrator concluded Parallel was not entitled to recover on its breach of fiduciary duty claim. As to legal malpractice, Parallel's claim was based on "essentially the same fact allegations Parallel made in its breach of contract and breach of fiduciary duty claims, which Parallel alleges here as breaches of its duty of care." The separate argument the arbitrator identified was Parallel's assertion the April 2009 settlement was "settled for drastically reduced value." The arbitrator set out the testimony of Parallel's expert that the April 2009 settlement should have been higher and Jenner's expert testimony that the April 2009 settlement could not have been higher. The arbitrator found the credentials and analysis of Jenner's expert "substantially more credible and convincing" than Parallel's expert. Further, the arbitrator found

Parallel failed to prove the April 2009 settlement "had any greater value than the settlement obtained." The arbitrator thus concluded Parallel failed to establish a right to recovery under its legal malpractice claims. The arbitrator awarded Jenner $3,000,000 as damages for breach of contract or, alternatively, for quantum meruit and sixteen percent of future settlement proceeds paid in the April 2010 settlement.

In January 2013, Parallel filed its petition and motion to vacate the arbitration award in which it raised essentially the same issues it raised at the arbitration. In April 2013, the trial court confirmed the award and denied Parallel's motion to vacate the arbitration award. This appeal followed.

In its first issue, Parallel argues the trial court erred by confirming the arbitration award based upon a termination provision that is unconscionable and against public policy. Specifically, Parallel argues that public policy prohibits agreements allowing attorneys to convert a contingency fee contract into another type of fee contract and that the provision is vague. In its second issue, Parallel argues that, because the quantum meruit recovery substitutes for the very recovery under the contract that is unconscionable as against public policy, the quantum meruit recovery was also against public policy. In its third issue, Parallel argues an attorney who has abandoned a client without just cause before completing a contingency fee contract forfeits all compensation, and the trial court therefore erred in confirming an award of attorney's fees based upon quantum meruit.

We review de novo a trial court's confirmation of an arbitration award under the FAA based on the entire record. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 825-26 (Tex. App.—Dallas 2009, no pet.); *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407 (Tex. App.—Dallas 2007, no pet.). An arbitration award is treated the same as the judgment of a court of last resort. *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.

App.—Dallas 1987, writ ref'd n.r.e.). All reasonable presumptions are indulged to uphold the arbitrator's decision, and none is indulged against it. *Bailey*, 727 S.W.2d at 90; *see also CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). An arbitration award is presumed valid and entitled to great deference. *Myer,* 232 S.W.3d at 407–08; *Crossmark, Inc. v. Hazar,* 124 S.W.3d 422, 429 (Tex.App.—Dallas 2004, pet. denied). When reviewing an arbitration award, we may not substitute our judgment merely because we would have reached a different decision. *Bailey,* 727 S.W.2d at 90; *see also CVN Grp., Inc.,* 95 S.W.3d at 238. Judicial review of an arbitration award adds expense and delay and thereby diminishes the benefits of arbitration as an efficient, economical system for resolving disputes. *CVN Grp., Inc.,* 95 S.W.3d at 238; *Crossmark,* 124 S.W.3d at 429. Accordingly, our review of the arbitration award is "extraordinarily narrow." *Myer,* 232 S.W.3d at 408; *see also Statewide Remodeling, Inc. v. Williams,* 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.). Importantly, our review is so limited that we may not vacate an award even if it is based upon a mistake in law or fact. *Crossmark,* 124 S.W.3d at 429 (citing *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 266 (Tex. App.—Houston [14th Dist.] 1995, no writ)). Because of the deference given to arbitration awards, judicial scrutiny focuses on the integrity of the process, not the propriety of the result. *See Ancor*, 294 S.W.3d 833.

Under the terms of the FAA[2], an arbitration award must be confirmed unless it is vacated, modified, or corrected under one of the limited grounds set forth in sections 10 and 11 of the Act. *See* 9 U.S.C. §§ 9–11. Section 10(a) permits a court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

---

[2] The agreement did not expressly provide that the FAA applied; instead, the agreement provided for arbitration to be "conducted in Dallas, Texas under the auspices of JAMS®." Because the parties both refer to the FAA, and neither party disputes that the FAA applies, we apply the FAA.

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a). Although, over time, the courts have recognized certain common law exceptions for vacating an arbitration award, the United States Supreme Court has held that the grounds listed in the statute are the exclusive grounds for vacating an arbitration award under the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) (statutory grounds for vacating or for modifying or correcting arbitration award are exclusive grounds for expedited vacatur and modification of award pursuant to FAA); *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009) (concluding *Hall Street* restricts grounds for vacatur to those set forth in section 10).

*Hall Street* forecloses our review of non-statutory grounds. *Ancor*, 294 S.W.3d at 827. If we were to overturn the arbitration award as unconscionable and violative of public policy, we would be substituting our judgment merely because we would have reached a different decision. *See Campbell Harrison & Dagley, L.L.P. v. Hill*, 782 F.3d 240, 245-46 (5th Cir. 2015) (reversing federal district court's judgment vacating contingency fee portion of arbitration award as unconscionable; in rejecting arbitrators' determination regarding unconscionability, court substituted its judgment for that of arbitrators merely because court would have reached different decision). Further, the record shows the arbitrator did not reach any issues concerning the provision that Jenner was entitled, if the agreement was terminated, to receive compensation for all of its time incurred at its regular hourly billing rates in lieu of a contingent fee. Thus, we overrule Parallel's first, second, and third issues. *See Ancor*, 294 S.W.3d at 827.

In its fourth issue, Parallel argues the arbitrator improperly excluded and refused to hear the expert testimony of Keith Lowery, "one of the inventors of the technology that formed the basis of the relevant patents-in-suit." Parallel argues the exclusion of this testimony and associated exhibits amounted to a refusal to hear evidence pertinent and material to the controversy, specifically the patent infringement action that settled in April 2009.

The two excluded exhibits, Exhibits 142 and 144, are printouts of computer source code consisting of arcane words and short phrases interspersed with numbers and symbols. At the arbitration hearing, Parallel's counsel stated:

> what I would – I would question Mr. Lowery on is to show him the pieces of the configuration files and ask him if the open source files that we discussed, like jk_mount and workers.properties, et cetera, are present in the [defendant's] documents. And if your ruling is that we are not permitted do that, then I would respectfully submit Exhibits 144 and 142 in addition to the patents and the demonstrative [sic] as our offer – as Parallel Network's offer of proof on this issue.

The arbitrator stated the files in Exhibits 144 and 142 were beyond a non-expert witness's and beyond Lowery's personal knowledge. Parallel was therefore not allowed to question Lowery about the configuration files. However, Lowery then testified that he was a consultant for Parallel beginning in 2007. Lowery testified on cross-examination that the presence or absence of four modules or programs he described "doesn't tell you anything about whether they're infringing." Parallel did not submit an affidavit from Lowery indicating what his testimony would have been concerning the source code in Exhibits 142 and 144.

> The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and argument. An evidentiary error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.

*Cowle v. Dain Raushcer, Inc.*, 66 F.App'x. 525 (5th Cir. 2003), quoting *Forsythe Intern., S.A. v. Gibbs Oil Co. of TX.*, 915 F.2d 1017, 1023 (5th Cir. 1990).

Here, Parallel did not indicate in what manner Lowery's testimony concerning the presence of certain open source files in a particular defendant's documents were relevant to any issue involving Jenner's representation or the April 2009 settlement with that defendant. Lowery himself testified the presence or absence of certain modules or programs he described "doesn't tell you anything about whether they're infringing." The record is silent as to what Lowery would have testified concerning the source code in Exhibits 142 and 144. Under these circumstances, we conclude the exclusion of Lowery's testimony and Exhibits 142 and 144 did not so affect Parallel's rights that it may be said Parallel was deprived of a fair hearing. *See Cowle.*, 66 F.App'x. 525. Thus, the trial court did not err in denying Parallel's motion to vacate the arbitrator's award on the basis the arbitrator refused to hear evidence pertinent and material to the controversy. *See* 9 U.S.C. § 10(a); *Crossmark,* 124 S.W.3d at 429. We overrule Parallel's fourth issue.

We affirm the trial court's judgment.

130748F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PARALLEL NETWORKS, LLC, Appellant

No. 05-13-00748-CV          V.

JENNER & BLOCK LLP, Appellee

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-01146-E.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JENNER & BLOCK LLP recover its costs of this appeal from appellant PARALLEL NETWORKS, LLC.

Judgment entered October 9, 2015.